STATE of Utah, Plaintiff and
Respondent,

v.

Salvadore AYALA, Defendant
and Appellant.

No. 870533–CA.

Court of Appeals of Utah.

Oct. 14, 1988.

Larry R. Keller (argued), Salt Lake City, for defendant and appellant.

David L. Wilkinson, State Atty. Gen., Barbara Bearnson, Dan Larsen (argued), Asst. Attys. Gen., for plaintiff and respondent.

Before GARFF, BENCH and JACKSON, JJ.

## OPINION

BENCH, Judge:

Defendant appeals from a conviction by jury of unlawful possession of a controlled substance with intent to distribute for value, a second degree felony, in violation of Utah Code Ann. § 58-37-8(1)(a)(ii) (1986).[1] Defendant seeks reversal of his conviction or, in the alternative, a new trial. As grounds for appeal, defendant claims the affidavit filed in support of a search warrant was insufficient to establish probable cause as required by the fourth amendment, and that heroin seized from his person and certain incriminating statements he made to police officers should have been suppressed. We affirm.

On January 14, 1986, a circuit court judge issued a search warrant based on an affidavit submitted by Detective John Conforti of the Salt Lake County Sheriff's Department. The warrant authorized a "no-knock" search of a Salt Lake County residence for heroin and other controlled substances and drug paraphernalia.

Conforti stated in his affidavit that probable cause to search had been developed on the basis of information from two confidential informants. Within the previous week, Conforti had arranged with one confidential informant to make a "controlled drug buy" at the aforementioned residence. Conforti said he searched the informant for money or controlled substances and found none. The informant was then given a predetermined amount of money and was observed entering, and later leaving, the residence. Upon his return, the informant gave Conforti a quantity of heroin which he had purchased inside the residence. He was searched again and no money or other controlled substances were found. Conforti said the second confidential informant had reported that heroin had been sold out of the residence for some time.

On January 15, 1986, at 9:05 p.m., Conforti and other officers executed the search warrant. Shortly after the search began, an officer discovered a revolver, ammunition, a syringe, a metal canister commonly used to transport narcotics, and a small quantity of "a black tar substance" suspected to be heroin.

At approximately 9:55 p.m., defendant and two others arrived at the residence. Defendant, a young Mexican male, said in English, "I live here. What's going on?" He was taken at gunpoint and searched. In defendant's outside jacket pocket, Conforti found a soft pouch containing 96 balloons, each containing brown powder later determined to be heroin. Conforti also found $1320.00 in cash in two other pockets. Conforti then asked defendant if he understood English and gave him the Miranda warnings. Defendant said that he spoke English, understood his constitutional rights, and did not wish to answer questions at that time. He was then handcuffed and placed in custody.

About five minutes later, defendant approached Conforti and asked to speak to him. Defendant wanted to know what the charges were and what types of penalties he would be facing on those charges. After being informed of the charges, defendant stated he had been renting the premis-

---

1. Amended in 1987, subsection (ii) is now subsection (iv).

es for about six months and was an illegal alien from Mexico.

The search continued and officers discovered more cash, heroin, and paraphernalia in the home and on other individuals who arrived during the search. Deputy Jay Labrum took custody of the defendant while the search progressed. Defendant again initiated conversation by asking Labrum what type of trouble he was in. Eventually, defendant told Labrum that he had been "selling dope" and had made enough money to return to Mexico. Defendant was later transported to jail.

Defendant filed pretrial motions to suppress the seized evidence and his statements, and to disclose the names of the two confidential informants described in Conforti's affidavit for the search warrant. After a hearing, the court denied defendant's motions, but suppressed statements made by defendant after he had been given the Miranda warnings. Defendant's motion to clarify the court's ruling was denied.

At trial, defendant testified that he had never seen the balloons or cash seized from his person, and that the jacket he was wearing when he was searched had been borrowed. He also claimed he did not understand English well enough to comprehend the questions asked by police officers at the time of his arrest. The court then permitted the prosecution to impeach defendant's testimony in rebuttal through the use of defendant's statements previously suppressed by the court.

On appeal, defendant claims violations of the fourth, fifth, and fourteenth amendments to the United States Constitution, and article I, section 14 of the Utah Constitution. His argument is threefold: First, that the Conforti affidavit failed to establish probable cause; second, that the physi-

cal evidence obtained from the search of his person should have been suppressed because the search was unreasonable; and finally, that the failure of the trial court to instruct the jury on the prosecution's use of defendant's previously suppressed statements for impeachment purposes constituted reversible error.

### THE AFFIDAVIT

■ We first examine defendant's claim that the affidavit prepared by Detective Conforti in support of the search warrant was insufficient to establish probable cause.

Conforti's affidavit relates information obtained from two confidential informants. The first informant made a controlled drug buy at the premises described in the warrant. The second informant merely confirmed that heroin had been sold out of the residence for some time. The names of the informants were never disclosed by the prosecution.

Both the Utah Constitution, article I, section 14, and the fourth amendment to the United States Constitution require that issuance of search warrants be based upon "probable cause supported by oath or affirmation."[2] Whether an affidavit for a search warrant meets the probable-cause standard is determined by the "totality-of-the-circumstances" analysis of *Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). In a line of cases beginning with *State v. Anderton*, 668 P.2d 1258 (Utah 1983), the Utah Supreme Court adopted the *Gates* standard.[3] Factors to be considered include, among others, the veracity, reliability, and basis of knowledge of confidential informants, and whether the judicial officer issuing the warrant reached a practical, common sense decision. *State v. Hansen*, 732 P.2d 127 (Utah 1987). The

---

**2.** Both parties cite the United States and Utah Constitutions in their search and seizure arguments, but neither party has urged separate constitutional standards. Accordingly, for the purposes of this opinion, we will consider the standards to be comparable and will look to federal law for guidance. *See Michigan v. Long*, 463 U.S. 1032, 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983).

**3.** The line of cases includes: *State v. Hansen*, 732 P.2d 127 (Utah 1987); *State v. Espinoza*, 723 P.2d 420 (Utah 1986); *State v. Anderson*, 701 P.2d 1099 (Utah 1985); and *State v. Bailey*, 675 P.2d 1203 (Utah 1984). *See also State v. Miller*, 740 P.2d 1363 (Utah App.1987).

weight accorded these factors may vary according to the circumstances. *State v. Bailey*, 675 P.2d 1203 (Utah 1984).

The role of a reviewing court is not to conduct a "de novo probable-cause determination," but rather to determine "whether the evidence viewed as a whole" provides a "substantial basis" for the finding of probable cause. *Massachusetts v. Upton*, 466 U.S. 727, 732–733, 104 S.Ct. 2085, 2087–2088, 80 L.Ed.2d 721 (1984); *accord State v. Miller*, 740 P.2d 1363 (Utah App.1987). Because of the fourth amendment's "strong preference" for search warrants, a deferential standard of review is appropriate on appeal. *Upton*, 466 U.S. at 733, 104 S.Ct. at 2088. The United States Supreme Court has explained the significance of this standard, as follows:

> [A]lthough in a particular case it may not be easy to determine when an affidavit demonstrates the existence of probable cause, the resolution of doubtful or marginal cases in this area should be largely determined by the preference to be accorded to warrants.... This reflects both a desire to encourage use of the warrant process by police officers and a recognition that once a warrant has been obtained, intrusion upon interests protected by the Fourth Amendment is less severe than otherwise might be the case.

*Gates*, 462 U.S. at 237, n. 10, 103 S.Ct. at 2331, n. 10 (citation omitted).

Defendant argues that the magistrate had no basis for concluding that probable cause existed. We disagree. The warrant was issued for the purpose of searching a residence described with reasonable particularity. Conforti described the arrangements he had made with an informant to make a controlled drug buy. Conforti stated that the drug buy occurred within seven days of the affidavit, that the informant had been continuously observed, and had returned from the residence with heroin. All of these events were within the personal knowledge of the officer. Contrary to defendant's argument, the only part of Conforti's affidavit in which the knowledge, veracity, and reliability of a confidential informant are at issue involves the second informant's naked assertion that heroin was being sold out of the residence. The second informant's hearsay evidence is merely corroborative of the more substantive information contained in the affidavit. In issuing the search warrant, the magistrate had available the firsthand observations of the affiant, an experienced narcotics officer. From those observations, the magistrate could reasonably infer that contraband would be found on the premises described.

We conclude that the circumstances and events described in Conforti's affidavit, if taken in their entirety, provided sufficient information for the magistrate to issue the search warrant. We, therefore, uphold the ruling of the trial court since there was a substantial basis for the determination of probable cause.

## SUPPRESSION OF PHYSICAL EVIDENCE

 Defendant next argues that evidence seized from his person was inadmissible because the search violated his constitutional right to be free from unreasonable searches and seizures. He contends that the search of his person was improper under either the search warrant which authorized a search of the premises or under any exception to the warrant requirement.

We first take up the issue whether the search of the defendant was permissible under the search warrant. In *Ybarra v. Illinois*, 444 U.S. 85, 100 S.Ct. 338, 62 L.Ed.2d 238 (1979), police officers executed a search warrant authorizing a search of a certain tavern and bartender for controlled substances. While some officers searched the tavern, one officer frisked the patrons present in a search for weapons. In an initial frisk of Ybarra's pockets, the officer felt a soft object but did not remove it. A few minutes later, Ybarra was again frisked and this time the object was removed. The object, a cigarette pack containing packets of heroin, led to Ybarra's indictment and conviction.

On appeal, the Supreme Court reversed. The Court found that the search warrant authorized the officers to search the prem-

ises and the bartender, but gave "no authority to invade the constitutional protections possessed individually by the tavern's customers." *Id.* at 90, 100 S.Ct. at 341.

Similarly, the search warrant in this case conferred no authority on the officers to search defendant's person. The warrant named only the described premises. Neither defendant nor any other person was implicated by Conforti's affidavit. Because the standard of probable cause must be particularized to every person or place to be searched, a warrant authorizing the search of premises does not authorize officers to search an individual merely because that person is present on the premises, unless there is some independent probable cause to justify a search of that individual. *State v. Banks,* 720 P.2d 1380 (Utah 1986). *See also State v. Northrup,* 756 P.2d 1288 (Utah App.1988). Accordingly, the search of defendant's person was not preceded by the probable cause submitted in application for the search warrant, and cannot be justified on that basis.

■ We now consider whether the seizure of evidence from defendant's pockets can be justified under any exception to the warrant requirement. At the outset we note that warrantless searches "are per se unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions." *State v. Ashe,* 745 P.2d 1255 (Utah 1987) (quoting *Katz v. United States,* 389 U.S. 347, 357, 88 S.Ct. 507, 514, 19 L.Ed.2d 576 (1967)).

One exception to the warrant requirement permits an officer, who reasonably suspects that an individual may be armed and dangerous, to pat down the outer clothing of that individual in a search for "concealed objects which might be used as instruments of assault." *Sibron v. New York,* 392 U.S. 40, 65, 88 S.Ct. 1889, 1904, 20 L.Ed.2d 917 (1968); *see also* Utah Code Ann. § 77–7–16 (1982). The standard is whether a reasonably prudent man under the circumstances would believe that his safety or that of others was in jeopardy. *State v. Roybal,* 716 P.2d 291 (Utah 1986).

Defendant argues the search of his person was improper under this exception to the warrant requirement. Although the record contains sufficient evidence that the officers in this case were justified in frisking defendant, the search of defendant went well beyond a search for weapons. At the preliminary hearing, Conforti was asked, "And [the pouch of heroin was] a soft item is that correct?" He answered, "Yes." "Did you know immediately that that was not a weapon of any kind, isn't that correct?" Answer: "Yes."

It is generally held that police officers may not remove soft objects from an individual's pockets during a pat-down search. *See, e.g., State v. Collins,* 139 Ariz. 434, 679 P.2d 80 (App.1983); 3 LaFave, *Search & Seizure* § 9.4(c) (2d ed. 1987). By Conforti's own testimony, we conclude the search of defendant cannot be justified on the grounds of the "dangerous weapon" exception to the general constitutional prohibition against warrantless searches.

■ Another exception to the warrant requirement permits a search incident to a lawful arrest. Utah Code Ann. § 77–7–2 (1988) provides authority for peace officers to make an arrest with or without a warrant. The standard for evaluating an arrest for an offense not committed in the officer's presence is an objective one: "[W]hether from the facts known to the officer, and the inferences which fairly might be drawn therefrom, a reasonable and prudent person in his position would be justified in believing that the suspect had committed the offense." *State v. Cole,* 674 P.2d 119 (Utah 1983) (quoting *State v. Hatcher,* 27 Utah 2d 318, 495 P.2d 1259, 1260 (Utah 1972)). The law enforcement officer need not have "certain knowledge of the guilt of the suspect." *Hatcher* at 1260. A valid arrest occurs whenever "a crime under which the arrest is made and a crime for which probable cause exists are in some fashion related...." *Mills v. Wainwright,* 415 F.2d 787, 790 (5th Cir. 1969). A search is not invalid despite the fact that it precedes a formal arrest, so long as the arrest and search are substantially contemporaneous and probable

cause to effect the arrest exists independent of the evidence seized in the search. *State v. Banks,* 720 P.2d 1380 (Utah 1986).

The state contends the search and the subsequent seizure of the questioned items were proper, because there was probable cause to arrest defendant at the time of the search. Thus, an analysis of the record is necessary to determine whether probable cause to support defendant's arrest was established prior to the search of his person.

At the preliminary hearing, Conforti testified that the informant who made the controlled drug buy had described the individual from whom the heroin was purchased as a young Mexican male and that heroin was purchased inside the residence. Defendant was not present when the search began. Prior to defendant's arrival, an officer found a metal canister commonly used to transport narcotics, a syringe, and a small quantity of a black tar substance suspected to be heroin in one of the two bedrooms in the house. While the search continued, defendant, a young Mexican male, arrived and said, "I live here. What's going on?" He was taken by an officer at gunpoint, searched, and handcuffed.

The fact that police found a suspected controlled substance and narcotics paraphernalia in the home coupled with defendant's assertion that he lived there establishes sufficient probable cause for arrest. The record is unclear when defendant was placed under arrest but it is clear that there was an arrest.[4] Whether the arrest occurred before or after the search is not significant. The search was incident to an arrest so long as the arrest "followed quickly on the heels of the challenged search...." *Rawlings v. Kentucky,* 448 U.S. 98, 111, 100 S.Ct. 2556, 2564, 65 L.Ed. 2d 633 (1980).

Whether the evidence obtained during the search of the residence prior to defendant's arrest would have been sufficient to sustain the prosecution's burden of proof is a matter not presented for our review. Indeed, we note that

> [t]he mere occupancy of a portion of the premises where the drug is found cannot, without more, support a finding of its knowing and intentional possession by the accused. There must be some additional nexus between the accused and the contraband to show that the accused had the power and intent to exercise dominion and control over it.

*State v. Hansen,* 732 P.2d 127, 132 (Utah 1987). *See also State v. Fox,* 709 P.2d 316 (Utah 1985). There is, however, an important distinction between the evidence required for conviction and that required to constitute sufficient probable cause for arrest. As stated in *Brinegar v. United States,* 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949):

> The court's rulings ... illustrate the difference in standards and latitude allowed in passing upon the distinct issues of probable cause and guilt. Guilt in a criminal case must be proved beyond a reasonable doubt and by evidence confined to that which long experience in the common-law tradition ... has crystallized into rules of evidence consistent with that standard.... However, if those standards were to be made applicable in determining probable cause for arrest or for search and seizure ... few indeed would be the situations in which an officer, charged with protecting the public interest in enforcing the law, could take effective action toward that end.

*Id.* at 174, 69 S.Ct. at 1310.

Accordingly, we conclude the trial court properly admitted evidence seized from defendant's person. The discovery of contraband in the residence along with defend-

---

**4.** An arrest or "seizure" under the fourth amendment occurs when a reasonable person believes he is not free to leave. *United States v. Mendenhall,* 446 U.S. 544, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980). The pattern of events which occurred in the instant case are similar to the following examples given in *Mendenhall:* "the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled." *Id.* at 554, 100 S.Ct. at 1877.

ant's assertion of occupancy established probable cause for arrest. Once defendant was subject to arrest, his pockets could be searched by officers for weapons, contraband, or other evidence of the commission of a crime. Evidence seized from defendant's person, therefore, was admissible as evidence seized incident to an arrest.

## INCRIMINATING STATEMENTS

The last issue defendant raises on appeal concerns suppression of incriminating statements made by defendant after having been apprised by officers of his constitutional right to remain silent. It is clear from the record below that the court did not permit the state to use those statements during its case in chief, but did permit their use for rebuttal purposes after defendant took the stand in his own behalf.

Defendant correctly cites *Harris v. New York,* 401 U.S. 222, 91 S.Ct. 643, 28 L.Ed.2d 1 (1971), for the proposition that statements by a defendant made inadmissible due to the lack of procedural safeguards under *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), may still be used to attack the credibility of defendant's trial testimony. *See also Oregon v. Elstad,* 470 U.S. 298, 105 S.Ct. 1285, 84 L.Ed.2d 222 (1985). "The shield provided by *Miranda* cannot be perverted into a license to use perjury by way of a defense, free from the risk of confrontation with prior inconsistent utterances." *Harris,* 401 U.S. at 226, 91 S.Ct. at 646. Unlike *Harris,* however, defendant claims that the jury in the instant case received no instruction to limit use of his prior inconsistent statements as evidence of defendant's credibility, and not as evidence of guilt.

 At the conclusion of trial, the court directed the parties to put their exceptions to the jury instructions on the record. Defendant objected to two instructions, but made no reference to the need for a jury instruction limiting the use of defendant's prior inconsistent statements.

Utah R.Crim.P. 19(c), codified as Utah Code Ann. § 77–35–19(c) (1982), states:

No party may assign as error any portion of the charge or omission therefrom unless he objects thereto before the jury is instructed, stating distinctly the matter to which he objects and the ground of his objection. Notwithstanding the party's failure to object, error may be assigned to instructions in order to avoid a manifest injustice.

We hold that Rule 19(c) precludes defendant from contending error based on his failure to object to the lack of instruction at trial. *See, e.g., State v. Parkin,* 742 P.2d 715 (Utah App.1987). Although the rule provides an exception for inequitable circumstances, there must appear to be a "substantial likelihood that an injustice has resulted." *State v. Kazda,* 545 P.2d 190, 193 (Utah 1976). No such likelihood is indicated here.

Defendant's conviction is affirmed.

GARFF and JACKSON, JJ., concur.