STATE of Utah, Plaintiff and
Respondent,

v.

Larry W. RICHARDS, Defendant
and Appellant.

No. 880054–CA.

Court of Appeals of Utah.

Aug. 30, 1989.

Candice A. Johnson, Legal Defender's Office, Salt Lake City, for defendant and appellant.

David E. Yocom, Salt Lake County Atty., John N. Spikes, Deputy County Atty., Salt Lake City, for plaintiff and respondent.

Before BENCH, GARFF and ORME, JJ.

## OPINION

GARFF, Judge:

Defendant and appellant, Larry Richards, appeals from a jury verdict finding

him guilty of interference with a police officer making a lawful arrest, and disorderly conduct.

At about 10:15 p.m. on June 11, 1987, Richards's wife, Zina, went to her neighbors', the Stewarts', mobile home to use the telephone, stating that she was having an argument with her husband. Both Mr. and Mrs. Stewart testified that Zina was crying and upset, and had told them that Richards was on LSD and that she was afraid. Zina called Richards's brother, Brent, and requested that he come over. The Stewarts asked Zina if she wished to call the police, but she declined.

About fifteen minutes later, Brent and another brother, Bart, arrived and accompanied Zina back to her mobile home next door. A few minutes later, Zina's father, Deleon, arrived. At that time, an argument was in progress between the brothers in the mobile home, Richards accusing Brent of having an affair with Zina. Stewart, who remained in his house next door, and Deleon, who went to Richards's house, testified that they could hear raised voices but no shouting.

Stewart asked Deleon if he should call the police. Deleon answered that maybe he should. Stewart then called the police.

At approximately 11:26 p.m., two uniformed West Valley police officers, Plotnik and Bankhead, arrived. Bankhead was in a patrol car and Plotnik was in a police service dog truck. The officers talked to Stewart briefly, confirming that Stewart was concerned about Zina's welfare.

As the two officers approached the trailer, they heard raised voices inside and saw three men arguing. They described the men as "squaring off." Neither officer, however, observed any of the men pushing, shoving, or fighting.

Plotnik knocked on the door of the trailer. Richards answered the door. Plotnik told Richards that he was responding to a family fight call, and that he wanted to see Mrs. Richards. Richards responded that there was not a problem and that his wife was fine. The officers described Richards's response as agitated, stressed, and tense. Plotnik testified that he did not see

Zina at that time. Zina testified that she spoke to Bankhead through an open window, and told him that everything was alright. Both officers denied hearing this comment.

After Richards spoke to Plotnik, he began to close the door. Plotnik, however, put his foot inside the doorway to prevent the door from closing.

Testimony differs as to what occurred next. Both officers testified that Richards shoved Plotnik in the chest to prevent his further entry into the house. Witnesses for Richards testified that no such action occurred and that Richards did not strike Plotnik in any way.

Plotnik pushed his way into the room, informed Richards that he was under arrest, and electronically signalled for his police dog to enter the trailer. Bankhead entered the trailer to assist in the arrest.

Bankhead again told Richards that he was under arrest. As Bankhead attempted to effect the arrest, a struggle ensued. Richards attempted to escape from Bankhead's grip by pulling his hands away and tensing his arms. He then grabbed a door knob in an effort to avoid being handcuffed. However, he did not strike, threaten, or hit the officer. During this melee, the dog was barking and snapping. Eventually, the officers subdued Richards, took him out of the trailer, shackled him, and transported him to jail.

Richards was charged with unlawfully assaulting a police officer, interfering with a police officer making a lawful arrest, and engaging in disorderly conduct. A jury concluded that Richards did not assault Plotnik, but convicted him of interfering with a lawful arrest and disorderly conduct.

Richards raises two issues on appeal: (1) was his warrantless arrest lawful, and (2) was there sufficient evidence to find him guilty of disorderly conduct?

■ We review the evidence of a jury verdict and all inferences that can be drawn therefrom in the light most favor-

able to the verdict. *State v. Tolman*, 775 P.2d 422, 424 (Utah Ct.App.1989); *See also State v. Booker*, 709 P.2d 342, 345 (Utah 1985) (quoting *State v. Petree*, 659 P.2d 443, 444 (Utah 1983). We reverse such a verdict "only when the evidence is so lacking and insubstantial that a reasonable person could not have reached that verdict beyond a reasonable doubt." *State v. Walker*, 743 P.2d 191, 192 (Utah 1987) (quoting *State v. Isaacson* 704 P.2d 555, 557 (Utah 1985)).

## INTERFERENCE WITH A PEACE OFFICER

■ Plotnik and Bankhead were responding to a domestic violence complaint, one of the most potentially dangerous, volatile arrest situations confronting police. Zina reportedly was upset, crying, and afraid of her husband because they had had an argument earlier that evening and he had allegedly been using LSD. After the earlier argument, he left. When he returned later, Zina went to the Stewarts to call her brother-in-law for help. She testified that she wanted to leave with her children, but was afraid that there would be a fight over the children and that Richards would not let her take them. The police, upon their arrival, observed a confrontation taking place, inside the trailer home, between Richards and his brothers, all of whom were obviously agitated and angry. When Plotnik went to the door and asked to see and talk to Zina in order to ascertain her safety, Richards refused. As Richards was closing the door, Plotnik attempted to enter the house because he had reasonable cause to be concerned for Zina's safety. Although the evidence is controverted as to whether or not Zina told Bankhead everything was alright, both Bankhead and Plotnik testified that they did not hear her make this statement. Under these exigent circumstances, Plotnik was justified in entering Richards's home. *See* Utah Code Ann. § 77–7–2(3) (1982); *State v. McIntire*, 768 P.2d 970, 973 (Utah Ct. App.1989); *State v. Ayala*, 762 P.2d 1107, 1111–12 (Utah Ct.App.1988).

■ Richards, in an effort to prevent the entry, allegedly pushed Plotnik, which caused him to place Richards under arrest. Utah Code Ann. § 77–7–2(1) (1982) provides that a peace officer may make an arrest without a warrant for a public offense committed or attempted in his presence. Richards argues that because the jury acquitted him of assaulting a police officer, the arrest was unlawful and, therefore, he was justified in resisting the arrest. However, we note that there is a significant difference between the quantum of evidence required for conviction and that required to constitute sufficient probable cause for an arrest.

> The court's rulings ... illustrate the difference in standards and latitude allowed in passing upon the distinct issues of probable cause and guilt. Guilt in a criminal case must be proved beyond a reasonable doubt and by evidence confined to that which long experience in the common-law tradition ... has crystallized into rules of evidence consistent with that standard.... However, if those standards were to be made applicable in determining probable cause for arrest or for search and seizure ... few indeed would be the situations in which an officer, charged with protecting the public interest in enforcing the law, could take effective action toward that end.

*Ayala*, 762 P.2d at 1112 (quoting *Brinegar v. United States*, 338 U.S. 160, 69 S.Ct. 1302, 1310, 93 L.Ed. 1879 (1949)).

Both Plotnik and Bankhead testified that Richards shoved Plotnik, thereby committing a misdemeanor. Accordingly, we conclude that Plotnik had probable cause to arrest Richards for assaulting a peace officer, regardless of the fact that the jury did not believe there was sufficient evidence to find him guilty.

## DISORDERLY CONDUCT

■ Richards was charged with disorderly conduct, a violation of Utah Code Ann. § 76–9–102(1)(b)(i) (1978):

A person is guilty of disorderly conduct if:

(b) intending to cause public inconvenience, annoyance, or alarm, or recklessly creating a risk thereof:

(i) He engages in fighting or in violent, tumultuous, or threatening behavior; or

. . . . .

(iii) He makes unreasonable noises in a private place which can be heard in a public place.

After a careful examination of the entire record, we must conclude that the elements of this alleged crime are not present. The behavior of which the State complains took place in the confines of Richards's home. All of the witnesses, including the two police officers, stated that, although they could hear voices and there appeared to be a confrontation going on in the home, the conversation was never loud enough to be understood outside and could not be classified as "unreasonable noise." We, therefore, conclude that there is no evidence of any substance that would allow a reasonable person to find defendant guilty of disorderly conduct.

We affirm Richards's conviction for interfering with a peace officer making a lawful arrest but reverse his conviction for disorderly conduct. We remand to the trial court for resentencing in accordance with this opinion.

ORME, J., concurs.

BENCH, Judge (concurring and dissenting):

I concur in the affirmance of defendant's conviction of interfering with a peace officer, but dissent from the reversal of defendant's conviction of disorderly conduct. I believe there is sufficient evidence that would allow a reasonable person to find defendant guilty.

Defendant was charged with, and convicted of, disorderly conduct, a violation of Utah Code Ann. § 76–9–102(1)(b)(i) (1978). This subsection does not require that the incident occur in a public place or that it involve "unreasonable noise," as implied by the main opinion. The subsection merely provides that a person is guilty of disorderly conduct if:

(b) Intending to cause public inconvenience, annoyance, or alarm, or recklessly creating a risk thereof:

(i) He engages in fighting or in violent, tumultuous, or threatening behavior;

. . .

The evidence indicated that the incident took place in the late evening hours in a residential area. There was testimony that voices inside defendant's trailer were "boisterous," and that three males inside the trailer could be seen "moving their arms" and "squaring off." One witness testified that he could hear someone speaking loudly, and could see two males "standing nose to nose." There was also testimony that defendant was "freaking out," and that the brothers were angry with each other.

I believe the evidence indicates "tumultuous or threatening behavior" sufficient to support the offense charged. "Where there is any evidence, including reasonable inferences that can be drawn from it, from which findings of all the elements of the crime can be made beyond a reasonable doubt, our inquiry is complete and we will sustain the verdict." *State v. Gardner*, 101 Utah Adv.Rep. 3, 10 (1989). I would, therefore, affirm defendant's conviction of disorderly conduct.