**STATE of Utah, Plaintiff and Appellee,**

v.

**Mary Ann ROSENBAUM, Defendant and Appellant.**

**No. 910514–CA.**

Court of Appeals of Utah.

Jan. 13, 1993.

---

Ronald S. Fujino and Paul M. Grant, Salt Lake City, for defendant and appellant.

Jan Graham and Kevin J. Murphy, Salt Lake City, for plaintiff and appellee.

Before GARFF, GREENWOOD and JACKSON, JJ.

## OPINION

GREENWOOD, Judge:

Defendant, Mary Ann Rosenbaum, entered a conditional guilty plea to unlawful possession of a controlled substance, a third degree felony, in violation of Utah Code Annotated sections 58–37–8(2)(a)(i) and 58–37–8(2)(b)(ii) (Supp.1991). She challenges the trial court's denial of her motion to suppress, wherein she sought to have the search warrant declared invalid. We affirm.

## BACKGROUND

On May 14, 1991, Detective Perry Buckner, a member of the Salt Lake County Metro Narcotics Strike Force, submitted an affidavit for a search warrant to the circuit court. A county attorney had previously reviewed the affidavit. Detective Buckner sought a warrant to search the home of Rosenbaum and her husband, Alberto Avila, and all areas within its curtilage. The affidavit listed cocaine, drug paraphernalia, records pertaining to drug sales, and proceeds of drug transactions as items believed to be housed on or near the premises. Paraphrased facts stated in support of the warrant's issuance included the following:

(1) The affiant has over ten years of experience in law enforcement with six years specifically in narcotics investigation;

(2) during the previous month, the affiant initiated two controlled drug buys through the use of confidential informants (C.I.s) at the residence sought to be searched;

(3) the most recent controlled buy occurred within the previous week;

(4) the substance the C.I.s purchased tested positive for cocaine;

(5) both C.I.s informed the affiant that controlled substances were hidden throughout the yard, and the hiding places were regularly changed to avoid capture by police;

(6) the C.I.s who executed the controlled buys stated that the residence sought to be searched was mainly used for storage of drugs and most sales were accomplished at a different residence in Kearns;

(7) a third C.I. confirmed the information regarding the use of this residence as a storage place for controlled substances;

(8) C.I. number two informed the affiant that firearms had been observed at the

residence, and that Rosenbaum had been known to carry a handgun;

(9) the affiant reviewed county tax records and determined that Rosenbaum and her husband were owners of the residence;

(10) Rosenbaum's driver's license registration indicated her address to be that of the residence sought to be searched; and

(11) the three C.I.s identified Rosenbaum and her husband from their Utah Drivers License Photos.

The affidavit also requested authority to conduct a daytime no-knock search. The reasons given in support of the no-knock entry were that "physical harm may result to any person if notice were given, [and] the property sought may be quickly destroyed, disposed of, or secreted." This portion of the affidavit is preprinted with boxes that can be checked next to both of the reasons. The affiant also attested to the danger involved in this search because of the following circumstances: "1. Drug traffickers frequently possess firearms. 2. Cocaine is easily disposed of quickly. 3. Drug traffickers frequently refuse to open their door for any person unknown to them ... and 4. A C.I. stated firearms have been observed at the residence ... and in the suspects['] possession."

The warrant was issued as requested. The search took place just after sunrise, and officers seized five ounces of cocaine, along with drug packaging materials and scales.

## ISSUES

Rosenbaum argues on appeal that the search warrant was not based on probable cause under the Utah Constitution's provision forbidding unreasonable searches. Utah Const. art I, § 14. In connection with that argument, Rosenbaum urges this court to adopt the two-pronged *Aguilar–*

*Spinelli* test as the state constitutional standard, rather than the present federal "totality of the circumstances" test for determining probable cause.

Rosenbaum also challenges the affidavit's sufficiency to justify a no-knock search. Rosenbaum specifically challenges the affidavit's adequacy as to proof that physical harm or imminent destruction of property would result if officers were not authorized to enter unannounced.

## ANALYSIS

### Probable Cause

Rosenbaum asserts that the Utah Constitution requires that we reject the "totality of the circumstances" analysis set forth in *Illinois v. Gates*, 462 U.S. 213, 231, 103 S.Ct. 2317, 2328, 76 L.Ed.2d 527 (1983), and adopt the earlier analysis used by Utah courts, which examined the credibility of the informant and the reliability of the information as set forth in *Aguilar v. Texas*, 378 U.S. 108, 114, 84 S.Ct. 1509, 1514, 12 L.Ed.2d 723 (1964) and *Spinelli v. United States*, 393 U.S. 410, 416, 89 S.Ct. 584, 589, 21 L.Ed.2d 637 (1969).[1] Because the affidavit shows ample probable cause under either test, we need not determine whether the Utah Constitution requires us to choose between them. *See State v. Weaver*, 817 P.2d 830, 834–35 (Utah App. 1991).

"Factors to be considered [in the *Gates* test] include, among others, the veracity, reliability, and basis of knowledge of confidential informants." *Id.* (citing *State v. Hansen*, 732 P.2d 127 (Utah 1987)). "The weight accorded these factors may vary according to the circumstances." *Id.* at 1109–10. The magistrate's task is to consider whether under the circumstances described in the affidavit, " 'there is a fair probability that contraband or evidence of a crime will be found in a particular place.' " *State v. Purser*, 828 P.2d 515,

---

1. The Utah Supreme Court abandoned the *Aguilar–Spinelli* approach on the basis that it was " 'hypertechnical and divorced from [reality].' " *State v. Anderson*, 701 P.2d 1099, 1101 (Utah 1985) (quoting *Massachusetts v. Upton*, 466 U.S. 727, 732, 104 S.Ct. 2085, 2087, 80 L.Ed.2d 721

(1984)). The Utah Supreme Court adopted the *Gates* test "[i]n a line of cases beginning with *State v. Anderton*, 668 P.2d 1258 (Utah 1983)." *State v. Ayala*, 762 P.2d 1107, 1109 (Utah App. 1988), *cert. denied*, 773 P.2d 45 (Utah 1989).

517 (Utah App.1992) (quoting *Gates,* 462 U.S. at 238, 103 S.Ct. at 2332).

Utah appellate courts applying the *Gates* test have consistently deferred to the magistrate's finding of probable cause when reviewing the issuance of a warrant. *See, e.g., id.; Weaver,* 817 P.2d at 833; *State v. Ayala,* 762 P.2d 1107, 1110 (Utah App. 1988), *cert. denied,* 773 P.2d 45 (Utah 1989). The search warrant affidavit is examined "in its entirety and in a common sense fashion." *State v. Anderson,* 701 P.2d 1099, 1102 (Utah 1985). Ultimately, this court decides " 'whether the evidence viewed as a whole' provides a 'substantial basis' for the finding of probable cause." *Ayala,* 762 P.2d at 1110 (citing *Massachusetts v. Upton,* 466 U.S. 727, 732–33, 104 S.Ct. 2085, 2087–88, 80 L.Ed.2d 721 (1984)).

█ The search warrant affidavit in this case sets out clearly that the affiant initiated two controlled drug buys using two different C.I.s. The test results on the purchased substance indicated it was cocaine. Within one week prior to issuance of the warrant, a controlled drug buy had been completed. A third C.I. confirmed to the affiant that Rosenbaum's residence was used as a storage place for cocaine. The two controlled drug buys, combined with information from a third C.I., provide ample probable cause that drugs would be found on these premises.

An informant's basis of knowledge and veracity are inherent in a controlled drug buy. The affiant orchestrated the drug purchases and, therefore, was able to attest to the results of the purchases from first hand observation. Although the names of the C.I.s were never revealed at the suppression hearing, the officer's personal knowledge of the events created sufficient informant reliability for a probable cause determination. For example, in the *Ayala* case, one controlled drug buy, corroborated by information from a second C.I., was sufficient to support a probable cause finding. *Ayala,* 762 P.2d at 1110; *see also Purser,* 828 P.2d at 518 (finding that even where an informant used an unwitting participant in the controlled drug buy, there was a sufficient basis upon which to determine probable cause).

The search warrant affidavit description of two controlled drug buys, corroborated by evidence from a third C.I., provided a substantial basis for the magistrate's probable cause determination under both the *Gates* and the *Aguilar–Spinelli* tests. Therefore, we affirm the trial court ruling that the magistrate issued the warrant based on probable cause.

## No–Knock Warrant

Rosenbaum also argues that the magistrate authorized a no-knock search without the proof required under Utah Code Annotated section 77–23–10 (1990). The statute, with emphasis added, sets out the following parameters:

When a search warrant has been issued authorizing entry into any building, room, conveyance, compartment or other enclosure, the officer executing the warrant may use such force as is reasonably necessary to enter:

.    .    .    .    .

(2) Without notice of his [or her] authority and purpose, if the magistrate issuing the warrant directs in the warrant that the officer need not give notice. The magistrate shall so direct only upon proof, under oath, that *the object of the search may be quickly destroyed, disposed of, or secreted, or that physical harm may result to any person if notice were given.*

Rosenbaum claims that the search warrant affidavit failed to provide sufficient proof of either imminent destruction of the object of the search or physical harm to any person.

█ When this court reviews an affidavit authorizing no-knock entry, we do so in a common sense manner, viewing its contents as a whole. *State v. Rowe,* 806 P.2d 730, 732 (Utah App.1991), *rev'd on other grounds,* —— P.2d ——, ——, 196 Utah Adv.Rep. 14, 15 (Utah 1992). We conclude that the affidavit viewed in its entirety provides a sufficient basis for issuance of a no-knock warrant on either of the two statutory grounds. Although the

affidavit is lacking in specifics as to how the cocaine could be easily destroyed, the magistrate could easily infer that drugs hidden in locations in the house and yard might be quickly disposed of or secreted. *See Rowe*, 806 P.2d at 733 ("The small amount of drugs ordinarily found in a residential setting can be easily and quickly destroyed with even the briefest notice."); *State v. Miller*, 740 P.2d 1363, 1367 (Utah App.1987) (determining that marijuana plants in two large storage sheds could be easily destroyed or disposed of), *cert. denied*, 765 P.2d 1277 (Utah 1987); *State v. Spisak*, 520 P.2d 561, 563 (Utah 1974) (ruling that marijuana plants in residence could easily and quickly be destroyed).

Additionally, the affidavit states that C.I. number two told the affiant that firearms had been observed at Rosenbaum's residence and "in the suspects['] possession." The affidavit also relates that the affiant's experience and training leads him to believe that "drug traffickers frequently possess firearms ... and refuse to open their door for any person unknown to them due to the inherent dangers associated with possessing cocaine." The magistrate could infer from these circumstances that physical harm might result if officers announced their entry.[2] *See Miller*, 740 P.2d at 1367 (authorizing no-knock search when affidavit stated "[t]wo large watch dogs are always present and might pose a hazard to arresting officers"); *State v. Williams*, 168 Wis.2d 970, 485 N.W.2d 42, 48 (1992) (stating that drug trafficking in the 1990's poses significant threats to the safety of law enforcement officers where suspects possess both firearms and illegal drugs, justifying unannounced police entries). Accordingly, we conclude that the magistrate had a sufficient basis from the information provided in the affidavit to issue a daytime no-knock warrant on either of the two statutory criteria.

**2.** The criteria for issuance of no-knock searches found in Utah Code Annotated section 77–23–10(2) is less stringent than that required for the initial probable cause determination. The statute allows no-knock entry upon proof that there is the potential for the object of the search to "be quickly destroyed, disposed of, or secreted, or that physical harm may result to any per-

## CONCLUSION

Because the magistrate had ample probable cause to issue a search warrant for Rosenbaum's residence under either the totality of the circumstances or *Aguilar–Spinelli* tests, we decline to apply a separate constitutional analysis to this case. Also, we conclude that the magistrate properly authorized a daytime no-knock warrant. Upon these bases, we affirm the trial court's ruling denying Rosenbaum's motion to suppress.

GARFF and JACKSON, JJ., concur.

son." The word "may" modifies these two requirements. Because the affiant is placed in a position of predicting the potential for future events, he or she must necessarily rely on training, experience, and any information gathered from confidential informants or other reliable sources.