**STATE of Utah, Plaintiff and Appellee,**

v.

**Danny Ray GRIEGO, Defendant and Appellant.**

No. 950636–CA.

Court of Appeals of Utah.

Feb. 27, 1997.

Jan Graham and Kris C. Leonard, Salt Lake City, for Plaintiff and Appellee.

Before BENCH, BILLINGS and ORME, JJ.

## OPINION

BILLINGS, Judge:

Danny Griego appeals his convictions of two counts of assault by a prisoner, a third-degree felony, in violation of Utah Code Ann. § 76–5–102.5 (1995), and one count of interference with an arresting officer, a class B misdemeanor, in violation of Utah Code Ann. § 76–8–305 (1995). Specifically, Griego claims that the trial court erred in not dismissing the charges against him because the State failed to prove essential elements of the crimes. Griego also claims the trial court erred in giving several jury instructions. We affirm.

## FACTS

At 11:28 p.m., on July 14, 1992, Deputy Haussler of the Salt Lake County Sheriff's Office received a call from dispatch about a possible assault or domestic violence situation. Dispatch informed him that a witness reported seeing a male pull a female into a green and white pickup truck. This report included the truck's license plate number, the name of defendant as the truck's owner, as well as where the truck was last seen and which direction it had been going. After unsuccessfully trying to locate the vehicle, Deputy Haussler received another report from dispatch telling him to check on the whereabouts of one Julie Pierce, the alleged victim of the abuse, to ensure that she was not being held against her will. Dispatch also informed Deputy Haussler of Pierce's possible location.

A few minutes later deputy Haussler arrived at the location given to him by dispatch where he met Officer Bertram. Both officers were wearing uniforms and driving marked police cars. Deputy Haussler went up to the home and spoke with David Griego, the defendant's son. Officer Haussler explained to David that he was looking for Pierce and defendant. In response, David told Officer

Ronald S. Fujino and David P.S. Mack, Salt Lake City, for Defendant and Appellant.

Haussler that his father drove a green pick-up truck, that Pierce was his father's girl-friend, and that he did not know where they were. The two officers left defendant's home. Shortly thereafter, the two officers were again contacted by dispatch, informing them that the truck they were searching for had been seen at the home they had just left. They quickly returned to defendant's home.

When they arrived, both officers approached the front door of the house, which was open. The officers could see the defendant's son, defendant's teenage daughter, and a man they believed to be defendant sitting in the front room. Deputy Haussler also noticed that defendant was holding a beer and appeared intoxicated. The officers also reported seeing someone's shadow in a nearby hallway.

At this point Deputy Haussler explained who he was, why he was there, and asked defendant to come outside and speak with him and Officer Bertram. Officer Haussler testified that he wanted to talk with defendant outside so as to alleviate any stress in the situation as well as to separate defendant from Pierce to avoid any confrontations. Defendant refused the request in vulgar and obscene terms. Deputy Haussler asked defendant to come outside at least two additional times. Defendant responded with the same vulgar refusals. Ultimately, the officers went into defendant's home, walked over to defendant and each grabbed one of defendant's arms. While this was occurring, Officer Bertram reported seeing a female standing back in a hallway area. The two officers then escorted defendant out of the home while he flailed his arms and yelled obscenities.

Because of defendant's physical and verbal tirade, Deputy Haussler determined it would be imprudent simply to release defendant on the porch of the home and talk with him as he had originally planned. Instead, the officers escorted defendant to Deputy Haussler's car using a "control hold" on defendant's arm in order to conduct their investigation in a safe environment. Despite the officers' continued requests to defendant to "calm down" and their statements that they only wanted to talk to him, defendant continued to strug-

gle and yell obscenities, drawing the attention of several neighbors.

Once the officers reached the patrol car with defendant, Deputy Haussler bent defendant over the hood to keep him under control. While bent over the car, defendant continued screaming obscenities and yelling at his daughter and his neighbors to get a camera because "they are beating me like Rodney King." Furthermore, once bent over the car, the defendant began kicking wildly behind him, striking Deputy Haussler with his feet several times. Eventually, due to defendant's continued violence, Deputy Haussler placed defendant under arrest and handcuffed him.

During this fracas, defendant's daughter, Cara, went inside the house, retrieved a camera, and began photographing the events occurring between defendant and the officers. After several warnings to move back and stop interfering, which she disobeyed, Officer Bertram left defendant after he was under control and placed Cara under arrest for interfering with an arresting officer.

While Officer Bertram was getting Cara under control, Deputy Haussler placed defendant in the front seat of his patrol car, buckled the seat belt, locked and closed the door, and went to assist Officer Bertram. Defendant began to yell and kick, damaging the inside of the patrol car. Despite being in handcuffs, defendant eventually unfastened the seatbelt and opened the car door. As defendant began crawling out of the car, Shawn Sisneros, a dispatcher with the Salt Lake County Sheriff's Office who was riding along with Officer Bertram that night, noticed defendant's attempt to leave the police car while the two officers' attentions were directed towards Cara.

Sisneros ran to Deputy Haussler's patrol car and attempted to hold defendant in the car by grabbing defendant's legs, which was made very difficult due to defendant's repeated kicking of Sisneros in the arms and chest. Deputy Haussler eventually noticed what was going on and rushed to help Sisneros. In the process, defendant kicked Deputy Haussler in the chest. Deputy Haussler then climbed into the rear seat, grabbed

defendant under his arms, and attempted to pull him back up to a seated position in the front seat.

At this point, Officer Bertram came to help Deputy Haussler subdue defendant. He grabbed defendant's legs and repeatedly told defendant to calm down and to stop kicking. Defendant did not comply. Instead, defendant freed one of his legs, drew it back to his chest, and kicked Officer Bertram in the chest, knocking him to the ground. Officer Bertram regained his balance and again grabbed defendant's legs, holding defendant to the ground until Deputy Haussler was able to get out of the car and help regain control of defendant. The officers then picked up defendant, placed him back into the car, and belted him in.

Although defendant was arrested and booked on several charges, including assault, resisting arrest, disorderly conduct, public intoxication, and assault by a prisoner, eventually he was charged with only interference with an arresting officer, a class B misdemeanor, in violation of Utah Code Ann. § 76–8–305 (1995), criminal mischief, a class A misdemeanor, in violation of Utah Code Ann. § 76–6–106 (1995) (which was later amended to a class C misdemeanor), and two counts of assault by a prisoner, a third-degree felony, in violation of Utah Code Ann. § 76–5–102.5 (1995). After the State's case-in-chief, defendant moved to have the charges dismissed. Defendant claimed that because the officers' warrantless entry into his house and his seizure were illegal, the State failed to prove that he was "lawfully arrested," an essential element of assault by a prisoner and interference with an arresting officer. The court denied the motion, and a jury found defendant guilty of all charges. Defendant now appeals.

## ANALYSIS

### A. Failure to Dismiss

Defendant claims the trial court erred in not dismissing the charges of assault by a prisoner and interference with an arresting officer because the State failed to prove elements of the crimes for which defendant was charged. Specifically, defendant claims the State failed to prove that he was put under "lawful arrest," an element of assault by a prisoner, and that the State failed to prove he disobeyed a "lawful order," a required element of the interference with an arresting officer statute.

The seminal case in Utah dealing with this issue as well as with a person's right to defend himself against illegal police activities is *State v. Gardiner,* 814 P.2d 568 (Utah 1991). In *Gardiner,* a deputy with the Uintah County Sheriff's Department went to investigate a complaint about a loud party. *Id.* at 569. When he arrived, he went to the door where, after smelling alcohol and seeing several people he believed to be minors, he announced his intention to enter the building. *Id.* In response, Gardiner told the officer his father owned the building and the officer could not enter without a search warrant. *Id.* He then extended his arm to prevent the officer from entering. *Id.* The officer forced his way through and pushed Gardiner, who fell to the floor. *Id.* Gardiner responded by getting up and punching the officer. *Id.* The fight continued until Gardiner was subdued, arrested, and jailed. *Id.* At trial, Gardiner was found guilty of both assaulting a police officer and interfering with a police officer. *Id.* at 569–70.

The Utah Supreme Court affirmed Gardiner's convictions. *Id.* at 576. The court began its analysis by discussing the efficacy of the common law rule that allowed citizens to forcibly resist someone attempting to effect an illegal arrest. *Id.* at 572. The court "summarized the dangers of the common law self-help rule" by stating:

> "Self-help measures undertaken by a potential defendant who objects to the legality of the search can lead to violence and serious physical injury. The societal interest in the orderly settlement of disputes between citizens and their government outweighs any individual interest in resisting a questionable search. One can reasonably be asked to submit peaceably and to take recourse in his legal remedies."

*Id.* (quoting *State v. Doe,* 92 N.M. 100, 583 P.2d 464, 466–67 (1978)). The supreme court noted that because the reasons underlying the common law rule have dissipated, the

modern trend among states is to reject the common law right and adopt a rule that citizens may not use force to resist illegal police activity, unless the police officer uses excessive force. *See id.* at 573 & n. 2 (citing cases rejecting common law rule).

However, the court went on to conclude:

[W]ere we free to do so, we would be inclined to reject the English common law and adopt the diluted defense to an illegal search or arrest articulated in *Elson [v. State,* 659 P.2d 1195 (Alaska 1983)]* and similar decisions.[1] However, we conclude that we are not free to fashion such a rule because the legislature has already acted in the area.

*Id.* at 573 (footnote omitted and footnote added). The court determined that because the Utah Legislature had abolished all common law crimes, "a person is guilty of a crime only if that person's action and state of mind fit within the statutory definitional elements of a crime." *Id.* (citing Utah Code Ann. § 76-1-105 (1973)). The court further noted that "the legislature enacted a number of general" and specific defenses throughout the code, none of which recognize a general defense "based on the illegality of police conduct." *Id.* at 574. Thus, the court concluded that "[i]f such a defense exists in Utah, it must be grounded in the specific code sections under which [the defendant] was convicted." *Id.*

The *Gardiner* court went on to analyze the two statutes under which Gardiner was charged and convicted to determine if those particular statutes authorized an individual to forcibly resist an illegal arrest. *Id.* After closely scrutinizing the statutory language of Utah Code Ann. § 76-5-102.4 (1990) (assaulting a police officer),[2] the court concluded a person was not authorized to forcibly resist an illegal search and subsequent arrest if the officer was " 'acting within the scope of his

[or her] authority as a peace officer.' " *Gardiner,* 814 P.2d at 574 (alteration in original) (quoting Utah Code Ann. § 76-5-102.4 (1990)). This means that "[w]here the officer is not acting wholly outside the scope of his or her authority, the police action may not be resisted." *Id.* The court further concluded that even though the officer in *Gardiner* conducted an illegal search and seizure, he was acting within the scope of his authority, and hence, Gardiner had no statutory right to forcibly resist the police officer. *Id.* at 575–76.

Next, the court examined Gardiner's conviction for interference with an arresting officer. *Id.* at 575. At the time Gardiner was charged with the crime, the statute read:

"A person is guilty of a class B misdemeanor if he [or she] has knowledge, or by the exercise of reasonable care, should have knowledge, that a peace officer is seeking to effect a *lawful arrest* or detention of himself [or herself] or another and interferes with such arrest or detention by use of force or by use of any weapon."

*Id.* (emphasis added) (quoting Utah Code Ann. § 76-8-305 (Supp.1990)). The court noted that when "Gardiner hit the officer for the first time, he had violated section 76-5-102.4 [assault of a peace officer]." *Id.* The court then concluded that because Gardiner resisted the officers' attempts to place him under arrest after he committed the crime of assault on a peace officer, he was interfering with an "officer seeking to effect a lawful arrest," and hence was properly convicted of interfering with an arresting officer. *Id.*

■ In the present case, defendant, relying on the analysis of *Gardiner,* argues that the statutes under which he was charged, assault by a prisoner, Utah Code Ann. § 76-5-102.5 (1995),[3] and interference with an ar-

---

1. This rule would have allowed a person to forcibly resist an illegal arrest *only* in those cases in which a police officer used excessive force.

2. Utah Code Ann. § 76-5-102.4 (1990) provides:
 Any person who assaults a peace officer, with knowledge that he is a police officer, and when the peace officer is acting within the scope of his authority as a peace officer, is guilty of a class A misdemeanor.

3. Utah Code Ann. § 76-5-102.5 (1995) provides:
 Any prisoner who commits assault, intending to cause bodily injury, is guilty of a felony of the third degree.
 Prisoner is defined as:
 [a]ny person who is in custody of a peace officer pursuant to a *lawful arrest* or who is confined in a jail or other penal institution or a facility used for confinement of delinquent juveniles operated by the Division of Youth Cor-

resting officer, Utah Code Ann. § 76–8–305 (1995),[4] require the State to prove the lawfulness of his arrest, which the State failed to do and, thus, the court erred in not granting his motion to dismiss. Specifically, defendant claims that because his original seizure from his home was illegal, there was no lawful arrest, as required by Utah Code Ann. § 76–5–102.5 (1995), or no legal arrest or lawful order, as required by Utah Code Ann. § 76–8–305 (1995), accordingly, he could not be convicted of violating these statutes. We conclude defendant was validly and legally arrested, and therefore we affirm defendant's convictions.

 For purposes of our analysis we assume the police officers' warrantless entry into defendant's home and his seizure were illegal.[5] An illegal entry or prior illegality by officers does not affect the subsequent arrest of a defendant where there is an intervening illegal act by the suspect. *State v. Wagstaff,* 846 P.2d 1311, 1313 (Utah App.), *cert. denied,* 857 P.2d 948 (1993); *see also United States v. Waupekenay,* 973 F.2d 1533, 1537–38 (10th Cir.1992); *United States v. Bailey,* 691 F.2d 1009, 1017 (11th Cir.1982), *cert. denied,* 461 U.S. 933, 103 S.Ct. 2098, 77 L.Ed.2d 306 (1983). Quoting the Eleventh Circuit Court of Appeals, this court has expressed the reasons underlying this rule:

> "[W]here the defendant's response is itself a new, distinct crime, there are strong policy reasons for permitting the police to arrest him for that crime. A contrary rule would virtually immunize a defendant from prosecution for all crimes he might commit

that have a sufficient causal connection to the police misconduct.... Unlike the situation where in response to the unlawful police action the defendant merely reveals a crime that already has been or is being committed, extending the fruits doctrine to immunize a defendant from arrest for *new* crimes gives a defendant an intolerable *carte blanche* to commit further criminal acts so long as they are sufficiently connected to the chain of causation started by the police misconduct. This result is too far reaching and too high a price to pay in order to deter police misconduct."

*Wagstaff,* 846 P.2d at 1313 (quoting *Bailey,* 691 F.2d at 1017). Thus, in this case, if defendant committed crimes after the initial illegal seizure, he could have properly been arrested for those crimes. Further, if he was lawfully arrested for those crimes at the time he committed assaults on the police officers he could properly be convicted of assault by a prisoner.

In this case there was ample evidence of defendant's conduct subsequent to the officers' illegal entry to support defendant's arrest. After the officers illegally removed defendant from his home, using no violence, and well before he was arrested, he began hitting and kicking the officers, as well as constantly yelling vulgarities to such an extent that several neighbors exited their homes to see what was happening. This conduct prompted the officers to arrest defendant, for among other things, disorderly conduct, for which he was later booked, but

rections regardless of whether the confinement is legal.
*Id.* § 76–5–101 (1995) (emphasis added).

4. Utah Code Ann. § 76–8–305 (1995) states:
A person is guilty of a class B misdemeanor if he has knowledge, or by the exercise of reasonable care should have knowledge, that a peace officer is seeking to effect a *lawful arrest* or detention of that person or another and interferes with the arrest or detention by:
(1) use of force or any weapon;
(2) the arrested person's refusal to perform any act required by *lawful order:*
(a) necessary to effect the arrest or detention; and
(b) made by a peace officer involved in the arrest or detention; or

(3) the arrested person's or another person's refusal to refrain from any act that would impede the arrest or detention.
(Emphasis added.)

5. Judge Bench in his concurring opinion concludes the officers' original warrantless entry into defendant's home and his subsequent seizure were legal because the officers had probable cause to arrest him at the time of their entry for a domestic assault. In this case, the State did not claim on appeal that the original entry was supported by probable cause to believe defendant had committed a domestic assault. We are hesitant to resolve this case on such grounds when the issue is not briefed by either party and where there is a more straightforward avenue of affirmance.

not charged. The Utah Code defines disorderly conduct as follows:

(1) A person commits disorderly conduct if:

. . . .

(b) Intending to cause public inconvenience, annoyance, or alarm, or recklessly creating a risk thereof:

(i) He engages in fighting or violent, tumultuous, or threatening behavior; or

(ii) He makes unreasonable noises in a public place; or

(iii) He engages in abusive or obscene language or makes obscene gestures in a public place; or

(iv) He obstructs vehicular or pedestrian traffic.

(2) "Public place," for purposes of this section, means any place to which the public or a substantial group of the public has access and includes but is not limited to streets, highways, and the common areas of schools, hospitals, apartment houses, office buildings, transport facilities, and shops.

Utah Code Ann. § 76–9–102 (1995). Clearly, defendant's fighting with police and yelling of obscenities in public violated this statute. This statutory crime requires no "lawful arrest," nor does it contain any defense that would allow a defendant to be violent and disorderly in response to police misconduct. Thus, under *Gardiner*, the police were entitled to arrest defendant for disorderly conduct despite their earlier illegality. *See* 814 P.2d at 575. Therefore, defendant was legally arrested, and he subsequently assaulted the police officers while he was a prisoner; thus, he could properly be charged with and convicted of assault by a prisoner.

[3] Similarly, to analyze defendant's conviction of interference with an arresting officer, we follow the *Gardiner* court's analysis. As we have mentioned, it is clear that once defendant began hitting the officers and yelling obscenities in public, he committed the crime of disorderly conduct. Once the officers informed defendant he was under arrest for this crime, he continued by "the use of force" to resist the officers' attempt to make a lawful arrest and even made attempts to escape. These actions are sufficient to support a conviction under Utah Code Ann. § 76–8–305(1) (1995), which makes it illegal to use force to interfere with an officer "seeking to effect a lawful arrest or detention".[6] Thus, because defendant used force to interfere with his lawful arrest for disturbing the peace, defendant was properly charged with and found guilty of interference with an arresting officer. *See id.* § 76–8–305.

### B. Determinations for the Jury

■ Defendant next argues the trial court erred in submitting to the jury the issue of whether defendant was under legal arrest. He claims this was a legal, non-factual matter that had to be determined by the trial court. We need not reach this issue because even if the trial court erred in referring the question to the jury, it was harmless error. As reflected earlier in this opinion, the facts clearly compel a determination that defendant was lawfully arrested. Necessarily, the trial court, had it decided the issue, would have reached the same conclusion as the jury did.

### CONCLUSION

We conclude the trial court did not err in denying defendant's motion to dismiss. There was sufficient evidence to conclude that defendant was legally arrested prior to the time he committed an assault on the

---

6. Defendant relies on the language of Utah Code Ann. § 76–8–305(2) (1995) in claiming he had to violate a lawful order of the police to be convicted of the crime. That subsection states that it is illegal for an arrested person to refuse "to perform any act required by *lawful order*." (Emphasis added.) Although we agree that under that subsection defendant would have to violate a lawful order of the police, it is not the only subsection under which defendant could be convicted. The subsections of the statute are connected by the conjunction "or." Thus, if any of the subsections are met defendant can be convicted of the crime of interfering with an arresting officer. Here, there was abundant evidence on which the jury could premise a conviction pursuant to subsection (1)—i.e., interference with an arrest by "use of force." *See id.* § 76–8–305(1).

officers, as well as that he resisted his lawful arrest by the use of force.[7] We further conclude that the trial court did not commit reversible error in allowing the jury to determine whether defendant was lawfully arrested. We therefore affirm.

ORME, J., concurs.

BENCH, Judge (concurring in result):

I would affirm the convictions on the basis that the officers had probable cause to enter defendant's house and arrest him for assault. *See* Utah Code Ann. § 77–7–2(3)(c) (1995) (providing authority for warrantless arrest if officer has probable cause to believe suspect committed public offense and may "injure another person"). This was the approach taken by the prosecution at trial and is the most straightforward basis for affirmance.

Probable cause requires nothing more than a rational conclusion of probability. *State v. Dorsey,* 731 P.2d 1085, 1088 (Utah 1986). "Determinations of whether probable cause exists require a common sense assessment of the totality of the circumstances confronting the arresting or searching officer." *State v. Spurgeon,* 904 P.2d 220, 226 (Utah App.1995).

In this case, Officer Haussler received a dispatch call regarding "a possible assault or domestic violence situation." A witness had reported seeing a man pulling a woman into a white and green pickup truck, which was registered to defendant. Officer Bertram, who was called to assist Officer Haussler, had spoken with several witnesses who described the pickup truck and said that they had seen a man assault a woman. The witnesses said that the man appeared intoxicated and was verbally abusive. Officer Haussler received a second dispatch call, announcing that Julie Pierce had been taken from her home. The witness had asked the police to make sure that Julie "was not being held against her will."

When the officers went to the address that Officer Haussler had received through dispatch, they met a young man who identified himself as defendant's son. The young man said that Julie Pierce was his father's girlfriend, and that his father and Julie were not at home. At that time, the pickup truck was not in the driveway and Officer Haussler saw no one else in the house.

After leaving defendant's house, the officers received another dispatch call regarding domestic violence. Officer Bertram testified that the same witnesses had reported seeing the same man and woman fighting in the pickup truck at the address the officers had just visited. When the officers returned to the house, Officer Haussler saw the white and green pickup truck parked in the front yard. As the officers approached the open front door, they saw a man, whom they believed to be defendant, sitting on a couch and holding a can of beer. Officer Haussler testified that defendant appeared intoxicated. Defendant admitted to the officers that he was the driver of the pickup truck. Officer Haussler testified that he wanted to separate defendant and Julie to avoid any further violence. The officers recalled that defendant became verbally abusive in response to Officer Haussler's repeated requests that defendant step outside.

On these facts, the officers had probable cause to believe that defendant had committed the earlier-reported assault. *See* Utah Code Ann. § 77–7–2(3) (1995); *see also State v. Leonard,* 825 P.2d 664, 669 (Utah App. 1991) (holding warrantless arrest proper if "from the facts known to the officer, and the inferences which fairly might be drawn therefrom, a reasonable and prudent person in his position would be justified in believing that the suspect had committed the offense" (quoting *State v. Hatcher,* 27 Utah 2d 318, 320, 495 P.2d 1259, 1260 (1972))), *cert. denied,* 843 P.2d 1042 (Utah 1992).

The officers also had probable cause to believe that defendant might injure another person. *See* Utah Code Ann. § 77–7–2(3)(c) (1995). Domestic violence is "one of the most potentially dangerous, volatile arrest situations confronting police." *State v. Rich-*

---

**7.** We note that as the law now exists under *Gardiner,* the result we reach today might not occur in other factual situations. Some of the language in statutes such as the assault by a prisoner statute, requiring a "lawful arrest," might be construed as giving an individual a right to resist an "illegal arrest" and result in unintended results.

*ards,* 779 P.2d 689, 691 (Utah App.1989). In light of the domestic violence and defendant's apparent intoxicated state and verbally abusive behavior, the officers were justified in arresting defendant to prevent any further acts of violence.

Because defendant interfered with his own lawful arrest, we can affirm his conviction for interference with an arresting officer. *See* Utah Code Ann. § 76–8–305 (1995); *see also State v. Gardiner,* 814 P.2d 568, 575 (Utah 1991). Similarly, because defendant assaulted the officers while he was under lawful arrest, he was properly convicted of assault by a prisoner. *See* Utah Code Ann. §§ 76–5–101, –102.5 (1995).

I therefore concur only in the result.