**The STATE of Utah, Plaintiff and Respondent,**

v.

**Billy Leondus WHITE, Defendant and Appellant.**

No. 15210.

Supreme Court of Utah.

March 13, 1978.

Richard J. Leedy, Salt Lake City, for defendant and appellant.

Robert B. Hansen, Atty. Gen., Earl F. Dorius, Asst. Atty. Gen., R. Paul Van Dam, Salt Lake County Atty., David E. Yocom, Deputy County Atty., Salt Lake City, for plaintiff and respondent.

CROCKETT, Justice:

Billy Leondus White appeals from his conviction by a jury of possession of narcotics with an intent to distribute for value.[1] He contends (1) that the narcotics upon which his conviction is based were seized by an unlawful search; (2) that error was committed in instructing the jury on aiding and abetting and (3), that prejudicial statements were made by the prosecutor in his argument to the jury.

At about 8:30 p. m. on September 4, 1976, Officers Maurice Brophy, Charles Kramer and John Lomax of the Salt Lake City Police were at the airport to pursue information they had received from a reliable source that the defendant White would be arriving from Los Angeles with a substantial quantity of narcotics in a blue suitcase.

The defendant arrived at 8:25 p. m. The three officers watched him go to the baggage claim area and pick up a blue suitcase. Officer Kramer followed the defendant and stopped him on the sidewalk outside the building. After identifying himself, Officer Kramer made a cursory weapons search and asked the defendant for some identification. He then told the defendant that an investigation was being conducted and asked him if he would mind accompanying the officer to the airport security office to answer some questions. The defendant agreed and along with Officers Kramer and Brophy proceeded to the office. The defendant placed the suitcase on the floor, removed his coat and sat down about five or six feet away.

Officer Lomax then arrived and noticed the name Janet Smith on the suitcase and asked the defendant how he got it. He replied that he might have taken the wrong suitcase, whereupon Officer Brophy asked, "Well, you don't mind if we look in it then?" The defendant answered, "No, go ahead." Upon trying to open the suitcase the officer found it was locked and asked the defendant for the key. He produced his key ring and pointed out the one which opened the suitcase. In it was found a pound of heroin and one-half pound of cocaine. The evidence is that these narcotics could have a street value of up to a million dollars. In defendant's coat was the baggage claim check matching the stub attached to the suitcase.

■ In regard to the propriety of the search: it is to be had in mind that the constitutional protections are only against unreasonable searches.[2] The test to be applied is whether under all of the circumstances, fair-minded persons, giving due consideration to the rights and interests of the public, as well as to those of the suspect, would judge the search to be an un-

1. Section 58–37–8(1)(a)(ii), U.C.A.1953.

2. *State v. Criscola*, 21 Utah 2d 272, 444 P.2d 517 (1968); *State v. Lopes*, Utah, 552 P.2d 120 (1976).

reasonable intrusion into the latter's rights.[3] A further important observation is that the just-stated test to gauge the validity of a search without a warrant is satisfied if consent is given to the search,[4] as was done here; and that these rules apply even when the suspect is in custody.[5]

In addition to what has been said about the defendant's consent justifying the search of the suitcase, also to be considered here is the fact that this search was made incident to a lawful arrest. We recognize, of course, that an illegal search may not be made and then use the fruits thereof to provide probable cause for an arrest, and then claim justification of the search as one made incident to an arrest. However, if such probable cause for arrest exists independent of any evidence obtained as a result of the search, the fact that the search was conducted before the actual arrest does not invalidate the search nor preclude its characterization as being incident to the arrest.[6]

Defendant's argument that the trial court erred in instructing the jury on aiding and abetting is that he was charged and tried as the principal in the crime and not as one who aided someone else in its commission. Applicable here is U.C.A., 1953, Section 76–2–202 which provides:

Every person, *acting with the mental state required for the commission of an offense who directly commits the offense,* . . . *or intentionally aids another person to engage in conduct which constitutes an offense* shall be criminally liable as a party for such conduct. [Emphasis added.]

The testimony of Officer Brophy was that after the defendant had been given the *Miranda* warning, his explanation was that he had been paid $500 to pick up the suitcase and deliver it to a man in a hotel in Salt Lake City. From that testimony, there is a basis upon which to instruct on either theory: (1) that the defendant directly committed the offense charged or (2) that he aided another in doing so. There was no error in giving the instruction.

Defendant's claim that the prosecutor made prejudicial statements to the jury arises from these facts. His counsel called him as a witness and asked him only his name, address and occupation. As to the latter he answered that he was a "light-hauler," that is, that he hauled light loads with a truck. To the prosecutor's attempt to cross-examine him upon anything beyond that subject, or as relating to his possession of narcotics, the trial court sustained objections. During his closing argument the prosecutor stated:

The defense called Mr. White; they asked him his name and address. I could not cross-examine him now beyond his name and address. I am permitted to ask questions about his occupation—He was asked that on direct, but *no questions were asked with regards to the events of that particular day, where he got that dope, how much he paid for it, what was his connection, how much was he going to make.* He wasn't asked that because that would have given me an opportunity to cross-examine him on those points. So it was very skillfully done and I congratulate Mr. Leedy on doing that because *it*

**3.** *State v. Criscola,* supra note 2, 444 P.2d at 519. See also *State v. Kaae,* 30 Utah 2d 73, 513 P.2d 435 (1973).

**4.** *Schneckloth v. Bustamonte,* 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973); *U. S. v. Griffin,* 530 F.2d 739 (7th Cir. 1976); *People v. Billington,* Colo., 552 P.2d 500 (1976).

**5.** *Lightford v. State,* 90 Nev. 136, 520 P.2d 955 (1974).

**6.** *State v. Elk,* 249 Or. 614, 439 P.2d 1011, 1014–1015 (1968). See also *People v. King,* 5 Cal.3d 458, 96 Cal.Rptr. 464, 487 P.2d 1032

(1971); *State v. Carroll,* 111 Ariz. 216, 526 P.2d 1238 (1974); *State v. Baker,* 26 Ariz.App. 255, 547 P.2d 1055 (1976). While it has been stated that a search is not incident if it is remote in time or place from the arrest, *Preston v. U. S.,* 376 U.S. 364, 84 S.Ct. 881, 11 L.Ed.2d 777 (1964), the search will be upheld if it is "substantially contemporaneous" with the arrest. *People v. Marshall,* 69 Cal.2d 1, 69 Cal.Rptr. 585, 442 P.2d 665 (1968); *People v. Superior Court,* 6 Cal.3d 757, 100 Cal.Rptr. 281, 493 P.2d 1145 (1972); *Schmitt v. State,* 88 Nev. 320, 497 P.2d 891 (1972).

*keeps something away from the jurors.* [Emphasis added.]

 In regard to this claim of error it should be stated generally that when a defendant chooses to testify, he waives the privilege against self-incrimination and subjects his testimony to the same treatment as that of any other witness.[7] It should be recognized that in arguing his case before the jury the prosecution has both the duty and prerogative to analyze what the evidence does or does not show, as bearing on the guilt or innocence of the defendant.[8] Viewed in that light we do not see that the prosecutor's remark was anything other than a common-sense observation of a fact that the jurors themselves could not fail to notice: that the defendant's testimony was designedly limited for some purpose, and that purpose obviously was to avoid testifying to anything about his involvement, or his non-involvement in the facts concerning his apprehension and arrest with the narcotics in his possession. The defendant, having elected to so testify and to so limit his testimony, the fact of such limitation was the subject of legitimate comment by the prosecutor. However, out of an abundance of caution the trial court instructed the jury to disregard the remark of counsel; and it is to be assumed that the jurors adhered to their oath which required them to follow that instruction.[9]

During his rebuttal, the prosecutor made another remark of generally similar character, including the limitation on cross-examination. Defense counsel made no objection at that time, but after the jury had retired to deliberate, included that as a ground for a motion for a mistrial. In addition to what has been said above, the following comment applies to this assigned ground of error. If counsel desires to object and preserve his record as to such an error during argument, he must call it to the attention of the trial court so that if he thinks that it is necessary and appropriate to do so, he will have an opportunity to rectify any error or impropriety therein and thus obviate the necessity of an entire new trial.[10]

Affirmed. No costs awarded.

ELLETT, C. J., and WILKINS and HALL, JJ., concur.

MAUGHAN, J., concurs in result.

---

7. *State v. Long,* 29 Utah 2d 177, 506 P.2d 1269 (1973).

8. *State v. Kazda,* Utah, 540 P.2d 949 (1975); *State v. Bautista,* 30 Utah 2d 112, 514 P.2d 530 (1973).

9. *State v. Hodges,* 30 Utah 2d 367, 517 P.2d 1322 (1974).

10. *Wiley v. State,* Okl.Cr., 551 P.2d 1146 (1976).