**STATE of Utah, Plaintiff and Respondent,**

v.

**Louis A. BANKS, Defendant and Appellant.**

No. 19974.

Supreme Court of Utah.

June 20, 1986.

David C. Biggs, Salt Lake City, for defendant and appellant.

David L. Wilkinson, Atty. Gen., J. Stephen Mikita, Asst. Atty. Gen., Salt Lake City, for plaintiff and respondent.

ZIMMERMAN, Justice:

Defendant Louis Banks appeals from his convictions for possession of a controlled substance with intent to distribute for value and possession of a dangerous weapon by a restricted person. Banks argues that the evidence on the drug charge was obtained in violation of his right to be free from unreasonable searches and seizures and should have been suppressed; that the evidence on the weapons charge was insufficient to sustain the conviction; and that with respect to both charges, the twenty-six-month delay between his arrest and the trial court's decision violated his constitutional right to a speedy trial. We reverse the conviction on the weapons charge and affirm the conviction on the drug charge.

This case involves an investigation into the sale of narcotics. Prior to obtaining a search warrant, police officers conducted an extensive investigation into Banks's involvement in illicit drug traffic: On three separate occasions, the officer who signed the affidavit for the warrant utilized a confidential informant to purchase narcotics from Banks at the residence for which the search warrant was issued. This informant told the officer that Banks was "extremely careful in his operation and employ[s] a guard who is armed with firearms." A fourth controlled buy had been effected by another officer. The officers had received an anonymous tip that individuals at Banks's address were selling narcotics. Banks's vehicle had been observed frequently at the residence for over six months, and the telephone directory listed his address as that of the residence. Banks was known as a convicted felon to the officers engaged in the search.

Based upon the information in the affidavit, a no-knock warrant to search the residence was issued. Banks, his wife, and a

third party were in the residence. After handcuffing and frisking each of them, the officers informed Banks that they were looking for illegal drugs and read him his *Miranda* rights. At trial, the officer testified that Banks was handcuffed to insure the officers' safety during the search. The officers did not tell Banks that he was under arrest at that time.

A search of the residence followed. During the search, officers saw a shotgun leaning against a dresser in a bedroom and found a paper sack containing prescription drugs. They then conducted a full body search of Banks and found a prescription bottle containing a variety of controlled substances in his shirt pocket. A further search of the residence turned up three other guns: two were found under the pillows on a bed and the third was in a bedroom dresser drawer. At trial, the officer testified that he could not remember exactly when Banks was arrested. The vial was removed from Banks's pocket within ten to fifteen minutes after the search commenced, but Banks was not taken to the police station until the search was completed four hours later.

Banks was charged with one count of possession of a controlled substance with intent to distribute for value and four counts of possession of a firearm by a restricted person. U.C.A., 1953, § 58–37–8(1)(a)(ii) (Repl.Vol. 6A, Supp.1985); U.C.A., 1953, § 76–10–503(1) (Repl.Vol. 8B, 1978 ed.). He was arraigned in October 1981, and trial was set for mid-February 1982. In early February, Banks moved to suppress the evidence of the drugs discovered in his pocket. That motion was denied. Banks then requested and was granted a continuance, and the trial was rescheduled for May 11, 1982. On the trial date, the parties submitted the case to the judge on stipulated facts. Unfortunately, the judge died before he could issue a decision.

Soon after the trial judge's death, the presiding judge of the Third District Court met with both the prosecutor and defense counsel and asked them to enter into a stipulation acknowledging the sufficiency of the record so that the case could be assigned to a new judge for entry of a decision. The State asserts that the prosecutor signed such a stipulation and that it was delivered to Banks's counsel on June 29, 1982; however, no such stipulation appears in the file and Banks's counsel denies having ever received it. For reasons not apparent from the record, the case then lay dormant for almost eighteen months.

Finally, on December 14, 1983, a hearing was held by the judge newly assigned to the case. The judge first denied both Banks's renewed motion to suppress and his motion to dismiss on speedy trial grounds. Then, based upon the stipulated facts and the memoranda in the file, he found Banks guilty of possessing a controlled substance with intent to distribute for value and of one count of possessing a dangerous weapon, that weapon being a loaded Ruger .22 caliber pistol found under a pillow on a bed.[1] This appeal followed.

■ Banks first contends that the trial court improperly denied his motion to suppress the drug vial found in his pocket, arguing that the officers had no authority to conduct a full body search under a warrant authorizing only a search of the residence. The State, on the other hand, argues that the search was valid because it was conducted incident to Banks's arrest. We agree that the warrantless search was valid as a search incident to arrest.

As a starting point, we note that the warrant requirement is an important check upon the power of the State to subject individuals to unreasonable searches and seizures and is not to be lightly disregarded. *United States v. Jeffers*, 342 U.S. 48, 51, 72 S.Ct. 93, 95, 96 L.Ed. 59 (1951). If the warrant is to serve its function, then the circumstances under which an individual may be subjected to a warrantless search must be narrow. Banks is correct,

---

1. For reasons not disclosed in the record, three of the original four weapons counts were dismissed.

for example, in his contention that a person's mere presence in the company of others whom the police have probable cause to search does not provide probable cause to search that person. *United States v. Di Re*, 332 U.S. 581, 587, 68 S.Ct. 222, 225, 92 L.Ed. 210 (1948). Nor are police officers authorized to search an individual merely because that person is present on premises for which a search has been authorized, *id.*, unless there is some independent probable cause to justify a search of the individual. *Cf. Ybarra v. Illinois*, 444 U.S. 85, 92–93 and n. 4, 100 S.Ct. 338, 342–43 and n. 4, 62 L.Ed.2d 238 (1979); *United States v. Peep*, 490 F.2d 903, 905 (8th Cir.1974).

■ In this case, however, the officers had more than adequate probable cause to arrest and search Banks prior to discovering the drug vial in his pocket. Immediately upon entering the residence, Banks was handcuffed, read his *Miranda* rights, and subjected to a pat-down for weapons. No further search of Banks's person was conducted at that time. This initial pat-down search was permissible. The officers were entitled to restrain Banks to the extent they believed necessary to insure their safety. *Terry v. Ohio*, 392 U.S. 1, 27, 88 S.Ct. 1868, 1883, 20 L.Ed.2d 889 (1968); *Adams v. Williams*, 407 U.S. 143, 146, 92 S.Ct. 1921, 1923, 32 L.Ed.2d 612 (1972); *accord* 2 W. LaFave, *Search and Seizure* § 4.9(d), at 147–48 (1982). Banks was known to be dangerous and accompanied by an armed guard, so the officers quite reasonably could have believed that restraining him with handcuffs was necessary.

■ Moreover, since the search warrant authorized a search for narcotics, which can be easily concealed and disposed of, the officers clearly had reason to restrain Banks to prevent him from secreting contraband and to preserve the premises during the search. *See United States v. McKethan*, 247 F.Supp. 324, 328 (D.D.C. 1965). A search warrant for a residence or premises, properly issued upon probable cause (as the search warrant in this case

unquestionably was), carries with it limited authority to detain an occupant during the search. *Michigan v. Summers*, 452 U.S. 692, 701–04, 101 S.Ct. 2587, 2593–95, 69 L.Ed.2d 340 (1981). Admittedly, the restraint of Banks was extreme, but given the exigencies of the situation, we cannot say that the officers' detention of Banks was an unreasonable infringment upon his fourth amendment rights.

Such detention does not necessarily amount to an arrest. *United States v. McKethan*, 247 F.Supp. at 327–28. Therefore, Banks's assertion that he was under arrest as soon as he was handcuffed and that the arrest was invalid because it was made without probable cause is not persuasive. Under the circumstances, it is reasonable to conclude that Banks was not under arrest until the officers subsequently discovered contraband and a weapon in a bedroom and that his detention until that point amounted to no more than a reasonable restraint to insure the officers' safety.

■ Even if the officers' conduct in handcuffing Banks amounted to an arrest, that arrest was not invalid. An officer may arrest an individual without a warrant either when he has reasonable cause to believe a felony has been committed and that the person arrested committed it or when the officer has reasonable cause to believe the person has committed a public offense and there is a reasonable basis for believing the person will destroy or conceal evidence of the commission of the offense. U.C.A., 1953, § 77-7-2 (Repl.Vol. 8C, 1982 ed.). In the instant case, the officers had probable cause to arrest Banks even before executing the warrant, based upon the controlled buys which had been conducted prior to the search.

■ Finally, regardless of when Banks was arrested, the search of his person and the discovery of the drug vial clearly were preceded by probable cause for his arrest and were therefore valid. *See State v. Kaae*, 30 Utah 2d 73, 513 P.2d 435 (1973). A search is not invalid, despite the fact that it precedes a formal arrest, so long as the

arrest and the search are substantially contemporaneous and probable cause to effect the arrest exists independent of the evidence seized in the search. *E.g., Buick v. United States,* 396 F.2d 912, 915 (9th Cir. 1968), *cert. denied,* 393 U.S. 1068, 89 S.Ct. 724, 21 L.Ed.2d 711 (1969); *United States v. Thomas,* 432 F.2d 120, 122 (9th Cir.1970), *cert. denied,* 400 U.S. 1022, 91 S.Ct. 587, 27 L.Ed.2d 634 (1971). Prior to searching Banks and discovering the drug vial in his pocket, the officers had discovered other drugs and a loaded firearm in the immediate vicinity. Thus, the search revealing the drug vial was preceded by probable cause and was therefore a valid search incident to arrest.

■ The corollary question involving the validity of the search is whether the scope of the search was proper. An individual in custody may be searched without a warrant to determine whether that individual has a weapon or possesses evidence which may be concealed or destroyed. *Chimel v. California,* 395 U.S. 752, 762–63, 89 S.Ct. 2034, 2039–40, 23 L.Ed.2d 685 (1969), *rehearing denied,* 396 U.S. 869, 90 S.Ct. 36, 24 L.Ed.2d 124 (1969); *United States v. Robinson,* 414 U.S. 218, 236, 94 S.Ct. 467, 477, 38 L.Ed.2d 427 (1973); *State v. White,* 577 P.2d 552 (Utah 1978); *State in re K.K.C.,* 636 P.2d 1044 (Utah 1981). The scope of such a search incident to arrest can be no broader than is necessary to insure against the destruction of evidence and to protect the officer's safety. *Shipley v. California,* 395 U.S. 818, 819–20, 89 S.Ct. 2053, 2054, 23 L.Ed.2d 732 (1969); *State v. Hygh,* 711 P.2d 264 (Utah 1985) (Zimmerman, J., concurring). There is no suggestion that the search in question exceeded these limits. Therefore, the motion to suppress was properly denied.

Banks next challenges his conviction for possessing a firearm, contending that there was insufficient evidence to support the verdict. We agree. The standard of review in cases alleging insufficiency of the evidence is well settled:

[W]e review the evidence and all inferences which may reasonably be drawn from it in the light most favorable to the verdict of the jury. We reverse a jury conviction for insufficient evidence only when the evidence, so viewed, is sufficiently inconclusive or inherently improbable that reasonable minds must have entertained a reasonable doubt that the defendant committed the crime of which he was convicted.

*State v. Booker,* 709 P.2d 342, 345 (Utah 1985), *citing State v. Petree,* 659 P.2d 443, 444 (Utah 1983); *see also State v. McCardell,* 652 P.2d 942, 945 (Utah 1982).

Section 76–10–503(1) of the Code prohibits any person who has been convicted of a crime of violence from owning or having a dangerous weapon "in his possession or under his custody or control." Banks unquestionably was a restricted person to whom the statute's prohibitions applied. The only question, then, is whether the evidence was sufficient to establish that Banks possessed or controlled the .22 caliber Ruger found in a bedroom at his residence.

■ Banks contends that although the weapon was found under a pillow in a bedroom, there was no evidence to indicate that the bedroom was occupied by Banks rather than his wife or the third party who also resided in the apartment. Furthermore, there was no other evidence to establish that Banks owned the gun. The State argues that the presence of the weapon in Banks's residence should be enough to impute its possession or control to him, even if he shared the residence and hence the possession of the gun with his wife and a third party.

If the evidence showed that Banks "exercised dominion and control" over the weapon, "with knowledge of its presence," we would have no difficulty holding that Banks could be convicted, even though he may have shared control of the weapon with his wife and the third party. *See State v. Bankhead,* 30 Utah 2d 135, 139, 514 P.2d 800, 803 (1973); *State v. Winters,* 16 Utah 2d 139, 142, 396 P.2d 872, 874 (1964). However, there is absolutely no evidence that Banks knew the weapon was

in the apartment or that he exercised any control over it. There is no logic to the State's suggestion that the mere presence of a gun in Banks's house supports an inference that Banks knew the gun was present or that he had some control over it. Nor does the record suggest that either the third party or Banks's wife was a restricted person who could not lawfully own or possess a gun. There is no evidence, for example, that Banks, rather than the third party who admittedly lived in the house, slept in or otherwise used the bedroom or the bed in which the gun was found. It would be wholly arbitrary to conclude that the mere presence of the gun in the apartment meant that Banks, rather than one of the other two people residing there, possessed or controlled it. The record here shows a simple failure to prove a critical element of the offense; we therefore must find that there was insufficient evidence to support the conviction and reverse.

Finally, we reach Banks's claim that he was denied a speedy trial. That claim must be analyzed under the test set out in *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), and adopted by this Court in *State v. Hafen*, 593 P.2d 538 (Utah 1979). *See also State v. Knill*, 656 P.2d 1026 (Utah 1982). In *Barker*, the Supreme Court adopted a balancing test in which the conduct of both the prosecution and the defendant are weighed. Four factors are involved: the length of the delay; the reason for the delay; the defendant's assertion of the right to a speedy trial; and the prejudice to the defendant resulting from the delay. *Barker v. Wingo*, 407 U.S. at 530, 92 S.Ct. at 2191.

█ We first note that the seven-month delay between Banks's arrest and the submission of the case to the first judge was neither substantial nor prejudicial. That delay was wholly attributable either to the reasonable requests of both the prosecutor and defense counsel for continuances or to normal problems of trial scheduling. The eighteen-month delay that followed, however, requires an analysis of the speedy trial issue.

The State argues that the eighteen-month delay was simply a delay in the decisional process rather than the trial process and that therefore there can be no violation of Banks's speedy trial rights. This question has not previously been considered under article I, section 12 of the Utah Constitution, nor has it been definitely resolved under the federal constitution. However, in *Pollard v. United States*, 352 U.S. 354, 361, 77 S.Ct. 481, 485, 1 L.Ed.2d 393 (1957), the Supreme Court noted in dicta that "the sentence is part of the trial for purposes of the Sixth Amendment," by implication including the whole trial process within the ambit of the speedy trial right. A number of federal courts have since adopted this reasoning, as have the better-reasoned cases from state courts. *See, e.g., United States v. Campbell*, 531 F.2d 1333, 1335–36 (5th Cir.1976), *cert. denied*, 434 U.S. 851, 98 S.Ct. 164, 54 L.Ed.2d 121 (1977); *Welsh v. United States*, 348 F.2d 885, 886–87 (6th Cir.1965); *State v. Fennell*, 218 Kan. 170, 542 P.2d 686, 694 (1975). An excellent discussion of this issue and of the pertinent policy considerations is found in *Gonzales v. State*, 582 P.2d 630, 632–33 (Alaska 1978).

█ In accordance with these decisions, we conclude that the right to a speedy trial may encompass the time during which a matter is under consideration. A speedy trial necessarily contemplates not only a seasonal trial of the facts, but also a seasonal decision and sentencing following trial. Therefore, failure to render a decision in the trial of a criminal matter within a reasonable time may give rise to a claim of denial of the right to a speedy trial under both the sixth amendment to the United States Constitution and article I, section 12 of the Utah Constitution.

█ Having determined that Banks properly raised his claim, we consider the merits and analyze the matter under the *Barker* balancing test. The first factor is the length of the delay. There is no question that the eighteen-month delay between the initial submission of the case and the rendition of the decision is sufficient to

raise legitimate questions regarding defendant's right to a speedy disposition of his case.

Considering the second *Barker* factor—the reason for the delay—blame can be laid at the door of both the prosecutor and Banks. To some extent, the prosecutor simply allowed the case to get lost in the shuffle when the first judge died. On the other hand, a good portion of the delay was attributable to the inaction of Banks's counsel. After the death of the first judge, the presiding judge asked both the prosecutor and defense counsel to prepare a stipulation attesting to the sufficiency of the record so the case could be reassigned. Apparently, the stipulation did not reach the court's file, so the case was not reassigned. The prosecutor claimed to have sent the stipulation to defense counsel. Although the prosecutor may have failed to mail the document, Banks is not entitled to take advantage of that clerical error. His counsel was jointly responsible for preparing the stipulation. When the stipulation did not arrive, Banks's counsel should have taken steps to locate it, inasmuch as his counsel had as much obligation to provide that document to the court as did the prosecutor. Given his counsel's awareness of the need for a stipulation on the record, his failure to pursue the matter is difficult to understand.

The third *Barker* factor is whether the defendant asserted his right to a speedy trial. The record discloses that Banks did not assert his right to a speedy trial at any time. This fact makes it difficult for Banks to prove that he was denied a speedy trial.

**2.** Since Banks had not yet been convicted, nothing about the pending charge would have oper-

Finally, and perhaps most importantly, *Barker* requires an inquiry into whether any prejudice to Banks occurred as a result of the delay. We find that there was no prejudice. Because the case was submitted on stipulated facts, Banks's ability to defend himself was not handicapped. His evidence was fixed as of the time of the stipulation, in May 1982. Moreover, Banks was not incarcerated while waiting for a decision to be rendered. Although Banks claims that he suffered anxiety, that he was unable to procure stable employment pending the outcome of the case, and that he was unable to exercise his right to vote, nothing in the record supports those assertions.[2] Additionally, the trial court indicated that the delay had worked in Banks's favor: his attempts to rehabilitate himself during the delay convinced the court not to incarcerate him after he was convicted.

Banks's substantial contribution to the delay, coupled with the utter lack of prejudice to him, leads to the conclusion that, on balance, he was not denied a speedy trial. *See State v. Hafen*, 593 P.2d at 540–41; *State v. Knill*, 656 P.2d at 1028–29; *see also Gonzales v. State*, 582 P.2d at 633–35.

Affirmed in part and reversed in part.

HALL, C.J., and STEWART, HOWE and DURHAM, JJ., concur.

ated to preclude him from participating in his chosen political activities.