2002 UT 97

**STATE of Utah, Plaintiff and Respondent,**

v.

**Jack James TRANE, Defendant and Petitioner.**

No. 20010068.

Supreme Court of Utah.

Sept. 17, 2002.

**1054**

Mark L. Shurtleff, Att'y Gen., Marian Decker, Asst. Att'y Gen., Jennifer D. Barton, Salt Lake City, for plaintiff.

Kent R. Hart, Salt Lake City, for defendant.

RUSSON, Justice:

¶1 On writ of certiorari, Jack Trane ("Trane") seeks review of the court of appeals' decision affirming Trane's conviction of possession of a controlled substance, in violation of Utah Code Ann. § 58–37–8(2)(a)(i) (2000), in which the court of appeals concluded that the trial court's denial of Trane's motion to suppress evidence was proper. We affirm.

## BACKGROUND

¶2 At 4:15 a.m. on November 26, 1998, police dispatch sent out a call that a man was harassing customers at a Salt Lake City convenience store. Officer Walter Dobrowolski ("Dobrowolski") was initially assigned to the call, and Officer Randy Bushman ("Bushman") was assigned as back-up. Both officers were experienced with intoxicated individuals and had experienced situations where such individuals became violent.

¶3 Bushman arrived first in response to the call. He noticed Trane standing near the store at a bank of public telephones. As

Bushman approached the store, the store clerk pointed at Trane, indicating that Trane was the focus of the complaint.

¶4 As Bushman approached Trane, he smelled alcohol emanating from Trane's person and breath. Bushman suspected that Trane was intoxicated and possibly disturbing the peace. Bushman observed that Trane "was a little loud considering the time[ and] location," was behaving in a "tumultuous-type" manner, was using profanity, and was using his hands to express himself. Trane "puffed his chest out [and] took a defensive posture similar to a boxer" toward Bushman. Bushman also noticed that Trane was exhibiting some anger and was uncooperative.

¶5 Bushman requested Trane's identification. Initially, Trane refused to comply, indicating that Bushman needed "to deal with" the store clerk instead of with him. Specifically, Trane told Bushman that he was angry at the store clerk for refusing to telephone a taxi for him. After Bushman explained that Trane was obligated to identify himself, Trane produced a Utah identification card. As Bushman attempted to take the card, Trane would not release his grip on it until Bushman ordered Trane to relinquish it.

¶6 About the time Bushman obtained the card, Dobrowolski arrived in his patrol car. Bushman asked Dobrowolski to watch Trane while Bushman returned to his patrol car to check for warrants. Concerned for Dobrowolski's safety, Bushman told Dobrowolski that Trane had been "less than cooperative" and was "trying to talk his way into jail." Bushman explained, "I didn't want Officer Dobrowolski to step into something without any information [that could protect] Dobrowolski's personal safety." Dobrowolski asked if Trane had been frisked, and Bushman responded negatively.

¶7 As Dobrowolski approached Trane, Trane maintained the "stand that he had with" Bushman. Dobrowolski noticed that Trane was swaying, Trane's speech was slurred, and Trane's "face had the appearance of one who was intoxicated." He also noticed that Trane "smelled of alcohol." Dobrowolski believed that Trane was disturbing the peace and intoxicated. Because Trane was intoxicated and Bushman had informed Dobrowolski that Trane was belligerent, Dobrowolski "thought that the two coupled made [Trane] a possible danger to" Dobrowolski and decided to frisk Trane to "ensure that he didn't have any weapons." Dobrowolski asked Trane to turn around, place his hands behind his head, interlock his fingers, and submit to a frisk.

¶8 In response to Dobrowolski's frisk request, Trane backed up a step, "held his arms away," and said, "That ain't happening." After refusing the initial request to submit to a frisk, Dobrowolski became "more concerned" that Trane "had something he didn't want [Dobrowolski] to find that could hurt" the officers. When Trane refused to comply with a second command to submit to a frisk, Dobrowolski informed Trane that if Trane continued to refuse then Dobrowolski would compel him to submit. Again Trane refused to comply with Dobrowolski's order. In response, Dobrowolski told Trane to put his hands behind his back because he was under arrest "for failure to comply with [Dobrowolski's] order." Trane forcibly resisted. Noticing Trane's physical resistance, Bushman returned to assist Dobrowolski. Dobrowolski took Trane's right arm and Bushman took Trane's left arm in an arrest control technique.

¶9 Trane continued to forcibly resist the officers' attempt to compel him to submit "with some struggle and some thrashing." As the struggle continued, the officers and Trane ended up in the eastbound lanes of 2700 South, ten to twelve feet from where the struggle commenced, where all three "went to the ground." The officers struck Trane on the left cheek and in the ribs a couple of times during the struggle to protect themselves. Eventually, Dobrowolski subdued Trane with pepper spray, enabling the officers to handcuff Trane.

¶10 The officers arrested Trane for disturbing the peace, public intoxication, and interfering with a peace officer. After medical treatment, Dobrowolski transported Trane to jail. At the jail, Trane resisted attempts to search him, but a "small bindle" of cocaine was discovered in his sock.

¶11 The State charged Trane with possession of a controlled substance, a third degree

felony, in violation of Utah Code Ann. § 58–37–8(2)(a)(i) (1998); intoxication, a misdemeanor, in violation of Utah Code Ann. § 76–9–701(1) (1999); and interfering with a peace officer, a misdemeanor, in violation of Utah Code Ann. § 76–8–305(2) (1999). Trane moved to suppress the cocaine. In the motion to suppress, Trane argued that the police lacked a reasonable, articulable suspicion of criminal behavior to stop him and that therefore "any evidence obtained by exploitation of the illegal stop must be suppressed." In addition, Trane argued that the officers arrested him without probable cause and that therefore "the search-incident-to-arrest exception cannot justify the subsequent jailhouse search" where the cocaine was discovered.

¶ 12 The trial court concluded that the police had a reasonable, articulable suspicion to initially detain Trane. The court also concluded that the attempted frisk "was proper and supported by Officer Dobrowolski's reasonable concern for his safety." Finally, the trial court concluded that the police properly arrested Trane for disobeying a lawful command to submit to a frisk. The court alternatively concluded that the arrest was proper because the police had probable cause or "close to probable cause" to arrest Trane for intoxication. Accordingly, the trial court denied the motion to suppress, concluding, "The subsequent jailhouse search of the defendant is justified and proper as a search incident to [Trane's] arrest."

¶ 13 After the trial court denied Trane's motion to suppress, Trane conditionally pleaded guilty to one count of unlawful possession of a controlled substance pursuant to a plea agreement in exchange for the dismissal of the intoxication and interfering charges. As part of the agreement, Trane reserved the right to appeal the denial of his motion to suppress.

¶ 14 Trane appealed his conviction to the Utah Court of Appeals. The court of appeals ruled in an unpublished memorandum decision that the case of *American Fork City v. Pena–Flores*, 2000 UT App 323, 14 P.3d 698, controlled the outcome of this case. *State v. Trane*, 2000 UT App 360U, at 2, 2000 WL 33250537. In *Pena–Flores*, the court of appeals concluded that an individual can be convicted of interfering with an officer in

violation of section 76–8–305 of the Utah Code if (1) the police act within the scope of their authority, and (2) the police order, detention, or arrest had the indicia of lawfulness. 2000 UT App 323 at ¶ 11, 14 P.3d 698. Relying on *Pena–Flores*, the court of appeals explained that " 'a person can be guilty of interfering with a peace officer even when the arrest or detention is later determined to be unlawful,' " *Trane*, 2000 UT App 360U, at 2, 2000 WL 33250537 (quoting *Pena–Flores*, 2000 UT App 323 at ¶ 11, 14 P.3d 698), and held that "because the officers were acting within the scope of their authority and the arrest had the indicia of lawfulness," Trane was properly arrested under section 76–8–305, the interfering statute. *Id.* at 2–3. Accordingly, because the court of appeals held that the arrest was lawful, it affirmed the trial court's denial of the motion to suppress, holding that the search incident to arrest was valid. *Id.* at 1–3. Because the court of appeals affirmed the trial court on that ground, it did not reach the issue of whether Trane was properly arrested for intoxication. *See id.* at 3. Trane then petitioned this court for certiorari, which we granted.

¶ 15 Trane argues that the court of appeals erred by misconstruing the plain language of section 76–8–305 of the Utah Code because the term "lawful" in the statute "requires the police to have a reasonable suspicion for a search or probable cause for an arrest before they can arrest persons for interfering" and by applying *Pena–Flores*—which he asserts violates the constitutional ban against unreasonable searches and seizures—to this case. Trane also contends that the police lacked probable cause to arrest him for intoxication and thus any search incident to arrest would be unconstitutional. The State counters that the trial court held the attempted frisk was justified; however, even if its lawfulness is debatable, an individual has no right to resist an arrest or a police order, and therefore the police properly arrested Trane for violating section 76–8–305. The State also argues that the search at the jail was valid as a search incident to the officers' arrest of Trane for intoxication.

## STANDARD OF REVIEW

¶ 16 "On certiorari, we review the decision of the court of appeals, not the decision of the trial court." *State v. Harmon*, 910 P.2d 1196, 1199 (Utah 1995); *see also Taghipour v. Jerez*, 2002 UT 74, ¶ 8, 52 P.3d 1252. We review the decision of the court of appeals for correctness, affording its legal conclusions no deference. *State v. James*, 2000 UT 80, ¶ 8, 13 P.3d 576. Further, the questions of whether an arrest or a search is constitutional are questions of law that we review for correctness. *Harmon*, 910 P.2d at 1199; *State v. Brown*, 853 P.2d 851, 855 (Utah 1992).

## ANALYSIS

### I. APPLICATION OF *PENA–FLORES* TO THIS CASE

¶ 17 In this case, the Utah Court of Appeals affirmed the trial court, relying on *American Fork City v. Pena–Flores*, 2000 UT App 323, 14 P.3d 698, as controlling precedent and concluding that the officers properly arrested Trane under the interfering statute. *State v. Trane*, 2000 UT App 360U, at 2. The court of appeals explained, "Under *Pena–Flores*, an arrest for interfering with a peace officer is valid '[s]o long as [ (1) ] a police officer is acting within the scope of his or her authority and [ (2) ] the detention or arrest has the indicia of being lawful.'" *Trane*, 2000 UT App 360U, at 2 (alterations in original) (quoting *Pena–Flores*, 2000 UT App 323 at ¶ 11, 14 P.3d 698). Trane contends that the court of appeals wrongly decided *Pena–Flores*, and even if it did not, the court of appeals erred in blindly applying *Pena–Flores* to this case. However, we do not need to decide whether *Pena–Flores* was wrongly decided because that case is inapplicable to the instant case.

¶ 18 The issue in *Pena–Flores* was whether the interfering statute, section 76–8–305 of the Utah Code, required a "lawful arrest or detention." 2000 UT App 323 at ¶ 10, 14 P.3d 698 (quoting Utah Code Ann. § 76–8–305 (1999)). In the instant case, Trane contends that the language of subsection two of the interfering statute applies only when an arrest or a detention is lawful. Specifically, Trane contends that because the interfering statute requires a "lawful arrest or detention," the officers could not legally arrest him under the interfering statute for resistance to an unlawful order.

¶ 19 Although Trane's argument is substantially similar to the issue in *Pena–Flores*, the case is inapposite. *Pena–Flores* specifically addressed when "a person *can be guilty* of interfering with a peace officer" under section 76–8–305. 2000 UT App 323 at ¶ 11, 14 P.3d 698 (emphasis added). In this case, Trane was never convicted of violating the interfering statute. The actual issue in this case is whether the officers had authority and probable cause to arrest Trane under the interfering statute. *Pena–Flores* is limited to whether an individual can be convicted of violating the interfering statute and does not apply when the court is attempting to determine whether officers lawfully arrested an individual for allegedly violating the interfering statute. Nevertheless, because the decision of the court of appeals may be sustainable as a search incident to arrest, we now turn to that issue. *See Bailey v. Bayles*, 2002 UT 58, ¶ 10, 52 P.3d 1158 (holding that appellate court can affirm lower court if judgment is sustainable on alternate theory readily apparent from record).

### II. CONSTITUTIONALITY OF SEARCH INCIDENT TO ARREST

¶ 20 The ultimate question on certiorari review is whether the police lawfully searched Trane in a search incident to arrest.[1] If the police lawfully arrested Trane, then the search incident to the arrest that produced the cocaine was valid and the court of appeals properly affirmed the trial court's denial of Trane's motion to suppress.

¶ 21 It is axiomatic that "the right to be free from unreasonable searches and seizures embodied in the Utah and United States Constitutions is one of the most fundamental and cherished rights we possess." *State v.*

---

1. The parties dispute whether Dobrowolski's original attempt to frisk Trane was constitutional under *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). However, there is no need to address this question because the issue in this case is whether the officers properly arrested Trane. The officers never actually performed the frisk.

*Thomas,* 961 P.2d 299, 303 (Utah 1998) (footnote omitted). The Fourth Amendment to the United States Constitution provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend. IV. The Utah Constitution provides virtually identical protections:

> The right of the people to be secure in their persons, houses, papers and effects against unreasonable searches and seizures shall not be violated; and no warrant shall issue but upon probable cause supported by oath or affirmation, particularly describing the place to be searched, and the person or thing to be seized.

Utah Const. art. I, § 14.[2]

¶ 22 These constitutional provisions prohibit unreasonable searches and seizures. *State v. Brown,* 853 P.2d 851, 855 (Utah 1992) (citing *Katz v. United States,* 389 U.S. 347, 353, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967)). Under these provisions, "[w]arrantless searches are per se unreasonable unless undertaken pursuant to a recognized exception to the warrant requirement." *Brown,* 853 P.2d at 855; *see also State v. Shoulderblade,* 905 P.2d 289, 294 (Utah 1995) (stating that search without approval of judge is unreasonable unless subject to one of " 'a few specifically established and well-delineated exceptions' " (quoting *State v. Arroyo,* 796 P.2d 684, 687 (Utah 1990))); *State v. Banks,* 720 P.2d 1380, 1382 (Utah 1986) ("[W]e note that the warrant requirement is an important check upon the power of the State to subject individuals to unreasonable searches and seizures and is not to be lightly disregarded."). One such recognized exception is a search incident to a lawful arrest based upon probable cause under exigent circumstances.[3] *Brown,* 853 P.2d at 855; *see also Chimel v. California,* 395 U.S. 752, 762–63, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969); *Banks,* 720 P.2d at 1383–84; Utah Code Ann. § 58–37–13(3)(a) (Supp.2001).

¶ 23 Pursuant to the search incident to a lawful arrest exception, "an arresting officer may, without a warrant, search a person validly arrested." *Michigan v. De-Fillippo,* 443 U.S. 31, 35, 99 S.Ct. 2627, 61 L.Ed.2d 343 (1979); *see also State v. Lopes,*

---

**2.** Trane asserted that the officers contravened both the Fourth Amendment and article I, section 14 of the Utah Constitution. Although this court has previously indicated that the analyses are not identical under these provisions, *see State v. Ramirez,* 817 P.2d 774, 785 (Utah 1991), Trane did not argue that the analyses of these constitutional provisions are dissimilar or distinct as applied in this case, nor did he argue that the Utah Constitution affords him greater protection than the United States Constitution. In *Ramirez,* we refused to embark on an independent analysis under the Utah Constitution when the parties had neither argued for nor briefed a separate analysis. We explained:

> The parties have not argued for a separate analysis under article I, section 14 of the Utah Constitution, and therefore, we address the issue only under the federal constitution. However, that is not to suggest that a separate state constitutional analysis might not be appropriate.

817 P.2d at 785 (citations omitted). Similarly, the issues on appeal here will be analyzed only under the federal constitution and existing Utah precedent in which this court has applied article I, section 14 of the Utah Constitution. *State v. Giron,* 943 P.2d 1114, 1120–21 (Utah Ct.App. 1997); *see also State v. Bean,* 869 P.2d 984, 988

(Utah Ct.App.1994) (stating that "an appellate court can decline to address state constitutional claims under article I, section 14 if the party 'fails to proffer any explanation as to how this court's analysis should differ' under this section from the federal counterpart.") (quoting *State v. Roth,* 827 P.2d 255, 257 n. 1 (Utah Ct.App. 1992)).

**3.** A search of an arrestee's person is generally justified and supported by exigent circumstances. *New York v. Belton,* 453 U.S. 454, 457, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981); *Chimel v. California,* 395 U.S. 752, 763, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969). Such searches are justified to protect the officers from weapons, to preclude the destruction or concealment of evidence, and to prevent escape. *Knowles v. Iowa,* 525 U.S. 113, 116–18, 119 S.Ct. 484, 142 L.Ed.2d 492 (1998); *Belton,* 453 U.S. at 457, 101 S.Ct. 2860; *Banks,* 720 P.2d at 1384. Additionally, in the past we have held that "exigent circumstances exist when the safety of police officers is threatened." *State v. Anderson,* 910 P.2d 1229, 1237 (Utah 1996). Clearly, exigent circumstances existed here where Trane began to resist the officers physically and violently, thereby placing in question their safety and threatening the physical well-being of any officers holding Trane in custody.

552 P.2d 120, 121–22 (Utah 1976). For a search incident to arrest to be constitutional, the underlying arrest must be lawful, but it does not need to be supported by an arrest warrant. *Ker v. California*, 374 U.S. 23, 41, 83 S.Ct. 1623, 10 L.Ed.2d 726 (1963). The United States Supreme Court explained:

> A custodial arrest of a suspect based on probable cause is a reasonable intrusion under the Fourth Amendment; that intrusion being *lawful*, a search incident to the arrest requires no additional justification. *It is the fact of the lawful arrest which establishes the authority to search*, and we hold that in the case of a *lawful custodial arrest* a full search of the person is not only an exception to the warrant requirement of the Fourth Amendment, but is also a "reasonable" search under that Amendment.

*United States v. Robinson*, 414 U.S. 218, 235, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973) (emphasis added); *see also DeFillippo*, 443 U.S. at 35, 99 S.Ct. 2627 (stating that "constitutionality of a search incident to an arrest does not depend on whether there is any indication that the person arrested possesses weapons or evidence. The fact of a *lawful* arrest, standing alone, authorizes a search." (emphasis added)). Under this exception, any evidence, including all evidence discovered by serendipity of crimes other than that for which the suspect is arrested, is admissible in a criminal trial. *Harris v. United States*, 331 U.S. 145, 154–55, 67 S.Ct. 1098, 91 L.Ed. 1399 (1947), *overruled on other grounds by Chimel v. California*, 395 U.S. at 768, 89 S.Ct. 2034. However, if an arrest violated a defendant's constitutional rights under either the Fourth Amendment or the Utah Constitution or was otherwise unlawful, then any evidence secured incident to that arrest must typically be excluded from a criminal trial pursuant to the exclusionary rule. *Whiteley v. Warden, Wyoming State Penitentiary*, 401 U.S. 560, 568–69, 91 S.Ct. 1031, 28 L.Ed.2d 306 (1971); *Ker*, 374 U.S. at 35, 83 S.Ct. 1623; *Shoulderblade*, 905 P.2d at 292; *State v. Ramirez*, 817 P.2d 774, 786 (Utah 1991).

¶ 24 In this case, Officers Bushman and Dobrowolski arrested Trane for interfering with a peace officer, public intoxication, and disturbing the peace. After Trane was arrested and transported to the jail, officers searched Trane and discovered cocaine on his person. Unmistakably, this was a search incident to an arrest, *see United States v. Edwards*, 415 U.S. 800, 803, 94 S.Ct. 1234, 39 L.Ed.2d 771 (1974) (holding that full search of person incident to arrest can take place after accused arrives at place of detention); *Curd v. City Ct. of Judsonia, Ark.*, 141 F.3d 839, 843 (8th Cir.1998) (same); *Swain v. Spinney*, 117 F.3d 1, 6 (1st Cir.1997) (same), but the remaining question is whether the arrest was lawful, *State ex rel. K.K.C.*, 636 P.2d 1044, 1046 (Utah 1981).

¶ 25 The underlying arrest is lawful if it is supported by probable cause and authorized by statute. *State v. Harmon*, 910 P.2d 1196, 1199–1204 (Utah 1995); *see also United States v. Trigg*, 878 F.2d 1037, 1041 (7th Cir.1989). The United States Supreme Court explained, "[W]hile a search without a warrant is, within limits, permissible if incident to a lawful arrest, if an arrest without a warrant is to support an incidental search, it must be made with probable cause." *Henry v. United States*, 361 U.S. 98, 102, 80 S.Ct. 168, 4 L.Ed.2d 134 (1959); *see also State v. White*, 577 P.2d 552, 554 (Utah 1978) (explaining that arrest justified by probable cause supports search incident to arrest).

¶ 26 Under both the Fourth Amendment and article I, section 14 of the Utah Constitution, an officer must have probable cause before the officer can effect a warrantless arrest. "[T]he [United States] Constitution permits an officer to arrest a suspect without a warrant if there is probable cause to believe that the suspect has committed or is committing an offense." *DeFillippo*, 443 U.S. at 36, 99 S.Ct. 2627. However, a suspect does not need to be guilty of the offense for which the officers arrested the suspect for the officers to have probable cause to arrest. *Id.; see also Henry*, 361 U.S. at 102, 80 S.Ct. 168 (stating that "[e]vidence required to establish guilt is not necessary" for probable cause to arrest); *Brinegar v. United States*, 338 U.S. 160, 175, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949) (noting that probable cause to arrest is less than that which is required to justify conviction).

¶ 27 The United States Supreme Court defined probable cause justifying an arrest as

"facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *DeFillippo,* 443 U.S. at 37, 99 S.Ct. 2627; *see also Gerstein v. Pugh,* 420 U.S. 103, 111, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975); *Beck v. Ohio,* 379 U.S. 89, 91, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964); *Brinegar,* 338 U.S. at 175–76, 69 S.Ct. 1302. Similarly, this court explained that in Utah the determination of whether the police had probable cause to arrest someone without a warrant " 'should be made on an objective standard: whether from the facts known to the officer, and the inferences [that can] fairly … be drawn therefrom, a reasonable and prudent person in [the officer's] position would be justified in believing that the suspect had committed the offense.' " *State v. Cole,* 674 P.2d 119, 125 (Utah 1983) (quoting *State v. Hatcher,* 27 Utah 2d 318, 320, 495 P.2d 1259, 1260 (1972)); *see also State v. Anderson,* 910 P.2d 1229, 1232–33 (Utah 1996).

¶ 28 A law enforcement officer has probable cause whenever the crime is committed in the presence of that officer because the observing officer knows of sufficient facts to believe that the suspect committed the crime alleged. The United States Supreme Court explained, "If an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender." *Atwater v. City of Lago Vista,* 532 U.S. 318, 354, 121 S.Ct. 1536, 149 L.Ed.2d 549 (2001); *see also United States v. Watson,* 423 U.S. 411, 418, 96 S.Ct. 820, 46 L.Ed.2d 598 (1976) ("The cases construing the Fourth Amendment thus reflect the ancient common-law rule that a peace officer was permitted to arrest without a warrant for a misdemeanor or felony committed in his presence…."); *United States v. Lugo,* 170 F.3d 996, 1003 (10th Cir.1999) (holding that officer's observation of suspect committing misdemeanor offense afforded officer probable cause and legitimate basis to arrest suspect).

¶ 29 In harmony with this case law regarding probable cause for an officer to arrest an individual, the Utah Code sets forth circumstances under which an officer can effectuate an arrest:

A peace officer may make an arrest under authority of a warrant or may, without warrant, arrest a person:

(1) for any public offense committed or attempted *in the presence of any peace officer;* "presence" includes all of the physical senses or any device that enhances the acuity, sensitivity, or range of any physical sense, or records the observations of any of the physical senses[.]

Utah Code Ann. § 77–7–2(1) (1999) (emphasis added); *see also Lugo,* 170 F.3d at 1003; *cf. Utah Liquor Control Comm'n v. Wooras,* 97 Utah 351, 361–62, 93 P.2d 455, 460 (1939). The term "public offense" under section 77–7–2(1) generally includes misdemeanors. *Oleson v. Pincock,* 68 Utah 507, 511–12, 251 P. 23, 24–25 (1926). Accordingly, the officers had probable cause and were authorized to arrest Trane if Trane committed an offense in their presence.

### A. Arrest For Interfering With Peace Officer

¶ 30 The officers arrested Trane for interfering with an officer in violation of section 76–8–305, which provides:

A person is guilty of a class B misdemeanor if he has knowledge, or by the exercise of reasonable care should have knowledge, that a peace officer is seeking to effect a lawful arrest or detention of that person or another and interferes with the arrest or detention by:

 . . .

(2) the arrested person's refusal to perform any act required by lawful order:

(a) necessary to effect the arrest or detention; and

(b) made by a peace officer involved in the arrest or detention[.]

Utah Code Ann. § 76–8–305 (1999).

¶ 31 In this case, the officers had probable cause and statutory authorization to arrest Trane for interfering with an officer because Trane committed the offense in their presence. As the officers arrived, they noticed that Trane smelled of alcohol, swayed,

had slurred speech, and otherwise appeared intoxicated. They also noticed that Trane was "loud," acting in a "tumultuous-type" manner, angry, and uncooperative. Both officers believed that Trane was intoxicated and possibly disturbing the peace. As a result, the officers began seeking to lawfully arrest or detain Trane for these crimes. While detaining Trane to investigate, Dobrowolski requested that Trane submit to a frisk because Dobrowolski feared for his and Bushman's safety and wanted to ascertain whether Trane had any weapons on his person. Nevertheless, Trane refused to comply with Dobrowolski's order to turn around, place his hands on his head, and submit to a frisk. The officers then attempted to arrest Trane.

¶ 32 Trane, having been informed of the officers' intentions to frisk and arrest him, began to physically struggle with the officers to prevent them from frisking or arresting him. Again, Trane's physical resistance interfered with the officers' orders given to effect the arrest and detention. These acts were sufficient to justify the officers' arrest of Trane under the interfering statute. *See State v. Gardiner*, 814 P.2d 568, 575 (Utah 1991). Not only did these events occur in the officers' presence, but they were directed toward the officers. Because these events occurred in the presence of the officers, they had probable cause and were statutorily authorized to arrest Trane under Utah Code section 77–7–2(1).

¶ 33 Despite the foregoing, Trane contends that an individual should not be arrested for violating the interfering statute when the individual refuses "to follow an unlawful order." Because Trane struggled with the officers in this case, Trane's argument presupposes that an individual can resist, even physically, an unlawful arrest or order. However, in Utah there is no right to physically resist either an arrest or an order of the police, irrespective of the legality of the arrest or order, so long as the officers are within the scope of their authority. *Gardiner*, 814 P.2d at 574; *see also State v. Griego*, 933 P.2d 1003, 1006–08 (Utah Ct.App. 1997).

¶ 34 In *Gardiner*, a case involving physical resistance, we noted that the justification for the common law right to resist an unlawful

arrest or seizure had disappeared and that therefore the right has been repudiated in Utah. 814 P.2d at 573–74 (stating that right to resist unlawful police conduct rejected as defense to crime when common law defenses were supplanted by specifically codifying recognized defenses). Quoting the New Mexico Supreme Court, we stated:

> "Self-help measures undertaken by a potential defendant who objects to the legality of the search can lead to violence and serious physical injury. The societal interest in the orderly settlement of disputes between citizens and their government outweighs any individual interest in resisting a questionable search. One can reasonably be asked to submit peaceably and to take recourse in his legal remedies."

*Id.* at 572 (quoting *State v. Doe*, 92 N.M. 100, 583 P.2d 464, 466–67 (1978)).

¶ 35 The law prefers judicial settlement of disputes over street brawls and altercations, even when the lawfulness of police conduct is in question. Suspects should not be the judges of the lawfulness of police action, and redress of an unlawful search or seizure, e.g., an arrest not supported by probable cause or a detention not supported by a reasonable, articulable suspicion of criminal activity, is to be obtained in a court of law. Accordingly, the lawfulness of an officer's order or arrest is not determinative of whether an officer is authorized to arrest an individual under the interfering statute.

¶ 36 To determine when an officer is within the scope of the officer's authority, a court must decide whether the "officer is doing what he or she was employed to do or is 'engaging in a personal frolic of his [or her] own.'" *Id.* at 574 (quoting *United States v. Heliczer*, 373 F.2d 241, 245 (2d Cir.1967)). In this case, Bushman and Dobrowolski were acting within the scope of their authority. They were called just after 4:00 a.m. by dispatch to conduct an investigation in response to a call from the clerk of a convenience store, complying with their duties as peace officers. The officers arrived in their patrol cars. Although it is unclear from the record whether the officers were in uniform, Trane knew that Bushman and Dobrowolski were police officers conducting a

routine investigation and pursuing official police business. Accordingly, Trane had no right to physically resist the order to submit to a search, and the officers therefore properly arrested Trane on that basis.[4]

### B. Arrest for Intoxication

¶ 37 The officers also arrested Trane for public intoxication in violation of section 76–9–701(1) of the Utah Code. The court of appeals did not reach the trial court's alternate holding that the officers had probable cause or "close to probable cause" to arrest Trane for intoxication and that therefore the search incident to arrest that uncovered the cocaine was valid. Trane contends that the officers lacked probable cause to arrest Trane for intoxication because the officers did not believe that Trane posed a danger to himself or anyone else. A person commits the crime of public intoxication under the Utah Code when that person "is under the influence of alcohol ... to a degree that the person may endanger himself or another, in a public place ... where he unreasonably disturbs other persons." Utah Code Ann. § 76–9–701(1) (1999).

 ¶ 38 In this case, the officers had probable cause and statutory authorization to arrest Trane for intoxication because Trane committed the offense in the presence of the officers. Both officers heard the call from dispatch that a man was harassing or disturbing customers at a convenience store. When Bushman arrived at the store, the clerk indicated that Trane was the individual who had been disturbing others. Trane was in a public place: he was outside the convenience store near a bank of public telephones.

¶ 39 As the officers approached Trane, they each individually and independently noticed that Trane smelled of alcohol and exhibited signs of intoxication. For example, Bushman noticed that Trane was "loud" and behaving in a "tumultuous-type" manner.

Dobrowolski noticed Trane was swaying, Trane's speech was slurred, and Trane appeared intoxicated.

 ¶ 40 The officers also noticed that Trane was intoxicated enough to potentially pose a danger to himself and others. The officers feared for their safety, recognizing from past experiences with intoxicated individuals that they could become violent. In this case, Trane was angry, was uncooperative, had "puffed his chest out [and] took a defensive posture similar to a boxer," and initially would not release his identification card upon Bushman's request. Under such circumstances, the officers had probable cause to arrest Trane for intoxication. Therefore, because the officers had probable cause to arrest Trane for both interfering with a peace officer and intoxication, the search incident thereto did not violate either the Fourth Amendment or article I, section 14 of the Utah Constitution.

### CONCLUSION

¶ 41 The officers lawfully arrested Trane for both interfering with a peace officer and public intoxication because they were statutorily authorized and had probable cause to effectuate the arrest. Accordingly, the search incident to that arrest conducted at the jail was lawful, and the cocaine discovered during the search was admissible. Thus, the court of appeals properly affirmed the denial of Trane's motion to suppress.

¶ 42 Associate Chief Justice DURRANT, Justice HOWE, and Justice WILKINS concur in Justice RUSSON's opinion.

DURHAM, Chief Justice, concurring in the result:

¶ 43 I agree with the majority that the police officers in this case had probable cause to arrest Trane for public intoxication. I therefore concur that the evidence obtained

---

4. In her concurrence, Chief Justice Durham states that the majority somehow concludes that "a person may never refuse any order given by an officer, whether that order be lawful or not, or take any action, passive as it may be, that might impede an arrest or detention." *Infra* ¶ 46. However, under the facts of this case, our holding above is based upon the officers having

probable cause to arrest Trane when he physically and forcefully resisted and does not make the inference that she suggests. Chief Justice Durham does not point to any wording in which we "unnecessarily suggest that the police many never be limited or questioned when making an arrest," *infra* ¶ 46, nor can she because our opinion is limited to the facts of this case.

in the search incident to that arrest was properly admitted. The majority goes too far, however, in determining that one may properly be arrested for interfering under section 76–8–305 regardless of whether the officer is engaged in a lawful arrest or detention. This conclusion is unnecessary given the court's holding that there was an independent, lawful basis for the arrest in this case. Further, the majority's approach implies a rule that is unnecessarily confusing and overstates our holding in *Gardiner*.

¶ 44 The majority correctly determines that the court of appeals' decision in *Pena–Flores*, 2000 UT App 323, 14 P.3d 698, does not apply to this case. It does so, however, for the wrong reason. Rather than distinguishing *Pena–Flores* on the grounds that the current case involves a lawful arrest, the majority complicates the question by observing that *Pena–Flores* addressed what makes for a valid *conviction* under the statute, whereas this case considers what constitutes a proper *arrest* under the statute. The majority rationalizes this reading, stating that "a suspect need not be guilty of the offense for which the officers arrested the suspect for the officers to have probable cause to arrest." *Supra* ¶ 26. The natural implication of the majority's approach is that different factors may be considered in determining the propriety of an arrest than are considered when determining the validity of a verdict under the same statute. While it is true that we require different standards of proof for arrest and for conviction, we have never held that a factor not relevant to weighing probable cause is determinative in testing a verdict. To the extent that the majority implies that the rule of law should vary between arrest and conviction, I must disagree.

¶ 45 I also cannot agree with the way in which the majority applies *State v. Gardiner*, 814 P.2d 568 (Utah 1991), to the statute at issue here. In *Gardiner* we held that the common-law right to forcefully resist an arrest has been repudiated in Utah. *Id.* at 573. In that case, the defendant, Gardiner, was convicted of assaulting an officer, in violation of section 76–5–102.4, and interfering with an arresting officer, in violation of section 76–8–305. *Id.* at 569. The defendant punched an officer who was attempting to make an unlawful search and became more violent when the officer attempted to arrest him. *Id.* We held that a defendant does not have a right to *forcefully* resist an arrest, whether the arrest be lawful or not, so long as the officer is acting within the scope of his or her authority and with adequate indicia of authority. *Id.* at 573–75.

¶ 46 The statute at issue in the current case prohibits more than just forcefully resisting an arrest. It prohibits interference in three different forms:

(1) use of force or any weapon;

(2) the arrested person's refusal to perform any act required by lawful order

 (a) necessary to effect the arrest or detention; and

 (b) made by a peace officer involved in the arrest or detention; or

(3) the arrested person's or another person's refusal to refrain from performing any act that would impede the arrest or detention.

Utah Code Ann. § 76–8–305 (2001). The majority, however, does not refine its holding by tying *Gardiner*'s holding to a specific section of the statute, but rather crafts its ruling broadly, concluding that "the lawfulness of an officer's order or arrest is not determinative of whether an officer is authorized to arrest an individual under the statute." [1] *Supra* ¶ 35. I would limit the holding to section one of the statute. While there is wisdom in concluding that a person does not have a right to forcefully resist an

---

1. While the majority styles its holding as applying to the statute as a whole, it does specify that Trane violated section two of the statute. It is perplexing, however, why the majority chooses to ground its ruling on section two, which prohibits interfering by "refusal to perform any act required by lawful order," instead of section one, which prohibits interference by "force or any weapon." Utah Code Ann. § 76–8–305 (2001). Surely, the plain language of section two—"re-

quired by *lawful* order"—contemplates that the officer be acting lawfully. A narrow reading of that section is also suggested by the requirement that the officer's order be "necessary to effect the arrest or detention" and "made by a peace officer involved in the arrest or detention." I would hold that Trane's violent acts constituted a violation of section one, which applies to both lawful and unlawful arrests, and leave interpretation of section two for a case that is squarely on point.

arrest, I see no reason also to conclude that a person may never refuse any order given by an officer, whether that order be lawful or not, or take any action, passive as it may be, that might impede an arrest or detention. This dicta unnecessarily suggests that the police may never be limited or questioned when making an arrest.

¶ 47 I would hold that Trane was properly arrested for public intoxication. I would save the interpretation of section 76–8–305 for another day.